## A00A2504. HODGES v. THE STATE.
(545 SE2d 157)

MIKELL, Judge.

Edward Hodges was indicted on one count of aggravated battery, one count of aggravated assault, and two counts of possession of a firearm during the commission of a felony. A jury convicted him of aggravated assault and one weapon offense and acquitted him of aggravated battery and the corresponding firearm offense. On appeal, Hodges challenges the sufficiency of the evidence, the effectiveness of his trial counsel, and the admission of testimony concerning prior difficulties between Hodges and the victim. We affirm his conviction and remand for a hearing on his ineffective assistance of counsel claim.

1. Hodges first contends that the evidence was insufficient to support his conviction of aggravated assault. We disagree.

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant . . . no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Turner v. State*, 223 Ga. App. 448, 449 (1) (a) (477 SE2d 847) (1996).

Viewed in the light most favorable to the verdict, the evidence reveals that the victim met Hodges in 1994, when he paid her to have sex with him. An abusive, long-term relationship developed. The victim testified that Hodges always kept a loaded gun on the seat of his truck. On July 4, 1997, he arrived at her home at approximately 10:00 p.m. She was drunk on gin and beer and high on crack cocaine. The two went to a bar and, later, a restaurant. Hodges expressed a desire for sex, which the victim could not accommodate due to her period. Apparently, he wanted to solicit a prostitute. The next thing the victim recalled was seeing her hands "draw up." Then she heard Hodges say, "Oh, shit, baby, look what you made me do." The victim was shot in the front of her neck. The bullet lodged in her spine, rendering her a paraplegic. The victim could not recall whether she handled Hodges' weapon that night. She admitted she had previously

attempted suicide but denied shooting herself.

Hodges transported the victim to the hospital. There, he told Officer Charles Newman that the victim's gunshot wound was self-inflicted. According to Officer Newman, Hodges stated that he and the victim were talking and laughing about prostitutes. Hodges said the victim became upset, placed the gun to her neck, and pulled the trigger.

Dr. Casey Graybeal, a general surgeon, treated the victim immediately upon her arrival in the emergency room. Dr. Graybeal, who qualified as an expert in the care and treatment of gunshot wounds, testified that he saw no evidence that the gun was fired in very close proximity to the victim's skin. Dr. Graybeal explained that the factors associated with a wound inflicted by a gun fired at close range — skull fracture, gunshot powder burns, stippling, or "tattooing" — were absent in this case. He concluded that it would have been difficult to avoid "tattooing" if the gun was fired within a foot of the victim's head.

Bernadette Davy, a firearm examiner employed by the State Crime Laboratory, testified that when a gun is fired at close range, gunpowder gases that exit behind the bullet tend to cause stellate, or star-shaped, tearing of the skin. Sergeant Carol Martin, who investigated the shooting for the Gainesville Police Department, testified that at the hospital, an emergency room physician reported to her that he did not observe gunshot residue or stellate tearing around the wound. According to Sgt. Martin, both factors are typical of pressed contact wounds. Davy testified that stippling, as opposed to stellate tearing, is the physical bruising of the skin from unburnt powder gases. According to Davy, a gunshot wound would not exhibit stippling if the weapon, in this case a nine millimeter MAC-11 semi-automatic pistol, had been fired while pressed against the skin or from a distance of eighteen to twenty-four inches. No gunshot residue was found on the hands of either Hodges or the victim.

Hodges argues that the expert testimony is consistent with the theory that the victim shot herself. However, by its verdict, it is clear that the jury chose to believe the evidence that Hodges fired the weapon. The weight to be given to the evidence, including the experts' testimony, was for the jury to decide, *Pugh v. State*, 216 Ga. App. 253, 254 (1) (454 SE2d 538) (1995), and we find the evidence sufficient under the standard set forth in *Jackson v. Virginia*, supra, to support Hodges' conviction of aggravated assault.

2. Hodges next argues that the trial court erroneously admitted evidence of his prior difficulties with the victim. The victim testified that Hodges had threatened to slit her throat and "drink the blood," had pointed the gun at her between five and ten times, had struck her in the eye with the gun, had beaten her with his fists on several

occasions, and had fired a shot into a couch where she was sitting. The victim speculated that in each instance, Hodges was inflamed by jealousy. Hodges contends that the victim had not made him jealous on the night of the incident; thus, the prior acts were irrelevant to his motive or state of mind. We disagree.

In a statement made at the hospital, Hodges indicated that the victim had pointed the gun at him and said she would kill herself and Hodges before she would allow him to pick up a prostitute. The jury could have inferred from this evidence that Hodges became enraged when the victim threatened him. The prior difficulties evidence was clearly relevant to show Hodges' tendency to assault or batter the victim when she angered him.

In any event, the Supreme Court has made it clear that "evidence of the defendant's prior acts toward the victim, be it a prior assault, a quarrel, or a threat, is admissible when the defendant is accused of a criminal act against the victim. . : ." *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998).

> The rationale in *Wall* is that a defendant's prior acts toward the victim are admissible as evidence demonstrating motive, intent, or bent of mind toward the victim, thereby establishing "a logical, probative connection between the crime charged and the prior difficulty. (Cit.)" Id. at 509. Because the relationship between the defendant and the victim is usually relevant, it is not surprising that the nature of that relationship is subject to proof at trial.

*Porter v. State*, 243 Ga. App. 498, 501 (2) (532 SE2d 407) (2000). The trial court did not abuse its discretion in admitting the prior difficulties evidence.

3. Hodges raises a claim of ineffective assistance of trial counsel for the first time on appeal. Because appellate counsel was appointed after Hodges' amended motion for new trial was denied, we remand the case to the trial court for an evidentiary hearing on this claim. *Potter v. State*, 272 Ga. 430, 432 (3) (530 SE2d 725) (2000).

*Judgment affirmed and case remanded. Pope, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 9, 2001.

*Thompson, Fox, Chandler, Homans & Hicks, Robert L. Chandler*, for appellant.

*Lydia J. Sartain, District Attorney, Arturo Corso, Assistant District Attorney*, for appellee.