## A02A1795. HODGES v. THE STATE.

(580 SE2d 614)

PHIPPS, Judge.

Edward Hodges was convicted after a jury trial of aggravated assault of a woman by shooting her in the neck and possession of a firearm during the commission of a crime. He appealed to this court, and among other things, we found sufficient evidence to support his convictions, but remanded the case for the trial court's consideration of his ineffective assistance, of counsel claims.[1] After an evidentiary hearing on Hodges's motion for a new trial based upon such claims, the trial court denied the motion. In this appeal, Hodges maintains that he is entitled to a new trial because his trial counsel was ineffective. We disagree and affirm.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. The trial court's determination with respect to effective assistance of counsel will be affirmed unless the trial court's findings are clearly erroneous.[2]

The facts and circumstances surrounding this case need not be fully reiterated here as they are set forth in our previous opinion.[3] For present purposes, we outline the following: The evidence at trial showed that Hodges had met the victim in 1994 and that an abusive, intimate, long-term relationship had developed. At the time of the shooting in July 1997, Hodges was driving his Cadillac, and the victim was seated in the front passenger seat. As the two were riding, the victim became annoyed with Hodges. She picked up the gun that Hodges kept loaded in his vehicle and pointed it at him. The victim was shot in the neck when the gun was fired. At trial, Hodges testified that "[he] never touched the gun," that "[he] didn't pull the trigger," and that the victim had shot herself. By its verdict, however, it is. clear that the jury chose to believe other evidence that supported a finding that Hodges had fired the weapon.[4]

---

[1] See *Hodges v. State*, 248 Ga. App. 23 (545 SE2d 157) (2001).
[2] (Citations omitted.) *Chapman v. State*, 273 Ga. 348, 349-350 (2) (541 SE2d 634) (2001); see *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).
[3] See *Hodges*, supra.
[4] Id. at 23-24 (1).

1. Hodges contends that defense counsel rendered ineffective assistance by failing to recognize and then argue to the jury that certain evidence offered by the State's experts supported his account that the victim had shot herself.

The State presented expert testimony that the lack of stippling (or "tattooing") around the victim's wound supported a conclusion that she had been shot from a distance of at least 12 to 18 inches. Thus, the State argued, given the size and weight of the gun, the victim could not have fired the gun herself. But one of the State's expert witnesses explained that a gunshot wound would have no stippling if the muzzle had been pressed against the skin when the gun was fired. Hodges claims that the latter testimony was consistent with his account that the wound was self-inflicted. He complains that his trial attorney failed to follow up on that evidence through examination of the State's witnesses and argument to the jury.

But the record reveals that not only did defense counsel question the State's witnesses on that issue, but he also presented the expert testimony of a forensic pathologist, who specifically opined that it was possible for the victim to have shot herself and not have stippling around her wound. The record further reveals that in closing argument, defense counsel reminded the jury of that evidence. As the record does not support Hodges's complaint, this contention is without merit.

2. In two claims of error, Hodges contends that defense counsel was ineffective by injecting the theory of accident into the case. He claims that requesting a jury charge on that defense was error because the evidence did not support a finding of accident. He also claims that by arguing logically inconsistent defenses in closing, defense counsel undermined his credibility with the jury.

Hodges testified that the victim had shot herself, but there was evidence that supported other factual scenarios. For example, there was evidence that Hodges and the victim had struggled over the gun and that after the victim was shot, Hodges said to her, "Oh, shit, baby, look what you made me do." The victim testified that initially, the shooting had "looked like . . . an accident, that the gun accidentally went off." But later, through a "vision" she "hashed . . . out" while sleeping, she was able to recall that it was not "accidental," but that Hodges had pointed the gun at her and pulled the trigger. The victim's hands tested negative for gunpowder residue. While Hodges's hands also tested negative, he admitted that, because he needed to use a telephone, he had washed them after the shooting, before they were tested.

At the hearing on Hodges's motion for new trial, defense counsel testified that rather than ignore the evidence inconsistent with Hodges's testimony, he considered it important to account for it. He

therefore adopted a strategy of presenting alternative defenses, one of which was accident. The trial court did not clearly err in finding that counsel's strategy fell within the broad range of reasonable professional conduct.[5] A party can argue alternative theories, and a defendant who pursues alternative defense theories is entitled to requested charges on both theories, where, as here, there is some evidence to support each theory.[6] Where there is evidence of mutually exclusive defenses, the jury, as trier of fact, must select between them.[7]

3. Hodges contends that defense counsel provided ineffective assistance by failing to subpoena witnesses necessary to lay the foundation to admit lab results showing that the victim had large amounts of cocaine in her system at the time of the shooting. But he has not shown that this failure affected the outcome of his trial because other evidence was admitted concerning the victim's extensive past cocaine use and her cocaine and alcohol use on the night of the shooting. In addition, defense counsel presented expert testimony regarding the adverse effects of cocaine on a user's judgment and the correlation between cocaine addiction and suicide attempts.

4. Hodges contends that trial counsel provided ineffective assistance by failing to object to the testimony of Cheryl Christian, a State's expert witness on battered women syndrome, because her name did not appear on the State's list of witnesses. Hodges had elected to have the Georgia Criminal Procedure Discovery Act[8] apply to his case, and that Act required, among other things, the State to disclose the identities and addresses of all persons it intended to call as witnesses at trial.[9]

In rebuttal, the State called Christian, who described the syndrome and its cycles. While Christian had not met or evaluated the victim, she opined that a woman who, like the victim, had suffered "brutality" and yet remained "in love with her abuser" was likely in the "hope" phase of the cycle. That "hope" would cause such a woman to want to believe that her abuser's shooting of her had been an accident.

Hodges cites *Allison v. State*,[10] where the State engaged in misconduct by deliberately withholding the identities of three expert witnesses who testified in rebuttal, but who were properly part of its case-in-chief. Hodges asserts that Christian was actually part of the

---

[5] See *Ramsey v. State*, 272 Ga. 28, 29-30 (3) (526 SE2d 842) (2000).
[6] See *Bishop v. State*, 271 Ga. 291, 292 (3) (519 SE2d 206) (1999).
[7] *Williams v. State*, 209 Ga. App. 355, 356 (1) (433 SE2d 361) (1993).
[8] OCGA § 17-16-1 et seq.
[9] See OCGA § 17-16-8 (a); *State v. Lucious*, 271 Ga. 361, 362 (1) (518 SE2d 677) (1999).
[10] 256 Ga. 851, 853 (8) (353 SE2d 805) (1987) (considering subsequently repealed OCGA § 17-7-110).

prosecution's case-in-chief. He argues that Christian's testimony gave the jurors a means to reconcile the inconsistency in the victim's accounts and claims that withholding her identity robbed him of an opportunity to defend against her testimony.

> Rebuttal testimony should not be excluded merely because the state could have introduced it during its main case. Each case must be decided on its own merits. It is the importance of the evidence to the state's main case and whether the withholding was intended or designed to deny the defendant an opportunity to prepare his defense in relation to that evidence which will determine if reversible error has occurred. [Cit.][11]

The trial court in this case found that the State had not deliberately withheld Christian's identity for strategic advantage. The court found convincing the prosecutor's testimony that he had not anticipated that the victim would reveal inconsistent recollections or that Hodges would present multiple defense theories. He testified that it was not until after these circumstances unfolded that he realized that an expert on battered women syndrome would be useful.

Furthermore, " '[t]he witness list rule is designed to prevent a defendant from being surprised at trial by a witness that the defendant has not had an opportunity to interview.' [Cit.]"[12] Defense counsel testified that he had accepted an opportunity to interview Christian. After the interview, he determined that, because Christian had not interviewed the victim, her testimony would not be significant and he would show its weaknesses on cross-examination. The record reflects that defense counsel cross-examined her on that point.

Contrary to *Allison*, under these circumstances, we cannot say that the trial court clearly erred in determining that the State had not deliberately withheld Christian's name to deny Hodges an opportunity to defend against her testimony. Moreover, Hodges has failed to overcome the strong presumption that his trial counsel's strategy with regard to defending against Christian's testimony fell within the broad range of reasonable professional conduct.

5. Finally, Hodges contends that defense counsel was generally unprepared for trial and intentionally antagonized the trial judge such that the cumulative effect of defense counsel's behavior and the alleged instances of ineffectiveness denied him his right to a fair trial and effective assistance of counsel.

"[E]ach claim of inadequate representation must be examined

---

[11] *Thompson v. State*, 237 Ga. App. 91, 93 (2) (514 SE2d 870) (1999).
[12] *Rose v. State*, 275 Ga. 214, 217 (3) (563 SE2d 865) (2002).

independently of other claims, as Georgia does not recognize the cumulative error rule. [Cit.]"[13] Having examined the specific instances of alleged deficient performance, we find that Hodges has not shown that any constituted ineffective assistance of counsel. And as to Hodges's claim that defense counsel antagonized the court, the trial court specifically noted in its order denying Hodges's motion for new trial that "most, if not all, of trial counsel's unconventional antics occurred outside of the presence of the jury and therefore, although frustrating to the court, caused no prejudice to the defendant." Accordingly, Hodges has failed to demonstrate that but for his attorney's conduct, the outcome of his trial would have been different.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 21, 2003.

*Thompson, Fox, Chandler, Homans & Hicks, Robert L. Chandler,* for appellant.

*Jason J. Deal, District Attorney, Lee Darragh, Assistant District Attorney,* for appellee.

---

[13] *Burk v. State,* 253 Ga. App. 272, 273-274 (2) (558 SE2d 726) (2001).