## A03A0674. EASLEY v. THE STATE.
(584 SE2d 629)

ANDREWS, Presiding Judge.

Duntay Tromaine Easley appeals from denial of his post-trial motions for new trial, for judgment and acquittal, in arrest of judgment, and to bar imposition of sentence, and plea of double jeopardy following his conviction by a jury of aggravated assault and possession of a firearm during the commission of a crime.

1. Easley was charged with malice murder, felony murder, and possession of a firearm during the commission of a crime as a result of the shooting death of Goss and was convicted of the possession of a firearm count and the lesser included offense of aggravated assault. Viewed with all inferences in favor of the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Hodges v. State*, 248 Ga. App. 23 (1) (545 SE2d 157) (2001), the evidence was that Easley walked into the yard outside a house in Athens where Goss and Faust were standing and talking. As Easley walked up, Goss asked him if he was "still going to do it" to which Easley responded, "nah, man, nah." Shortly after Easley arrived, he produced a cocked pistol and pointed it at Goss. There was no evidence that Goss and Easley were arguing. Goss then said, "damn, man, go on, do what you going to do." The pistol fired and the bullet entered Goss' right front shoulder and exited the left side of his upper back, killing him.

Easley was known to play around with the gun, jacking it back and "bull shooting" (pretend shooting) it at people. When Goss fell to the ground, Easley first froze, then approached and attempted to give him CPR.

Easley threw the pistol to the side and then asked Faust to hide it, which he did by putting it in a bucket down the street. Faust later led police to the bucket where they found the gun in an inch of water with the clip removed.

Easley left the area and told Deadwyler he thought he had shot Goss and asked him to take Goss to the hospital. Deadwyler refused and suggested they call an ambulance. Easley and Deadwyler got another person to call for an ambulance, and Easley returned to Goss, where he was found by police, kneeling beside Goss' body.

The evidence of aggravated assault and possession of a firearm during the commission of a felony was legally sufficient. *Jackson v.*

*Virginia*, supra; *Jackson v. State*, 276 Ga. 408, 409 (1) (577 SE2d 570) (2003).

2. Both of Easley's enumerations address his contention that the trial court should have accepted the jury's second of three verdicts and that directing them to continue considering the involuntary manslaughter and aggravated assault lesser included offenses was error. They are considered together.[1]

The trial court properly charged the jury on malice murder, felony murder (the felony being aggravated assault), possession of a firearm during the commission of a crime (the crime being murder and aggravated assault), as well as the lesser included crimes of aggravated assault and involuntary manslaughter. The trial court also charged that their verdict was to be "signed by one of your number as foreperson, dated and returned to be published in open court. You'll find a space at the top of the indictment on the reverse side down at the bottom where it says verdict, whatever your finding it is you would write it in and have your foreperson sign it on the reverse side of the bill of indictment."

The jury, having deliberated several hours on the third day of trial, began deliberating again at 9:15 a.m. on the fourth day, and at 11:20 a.m., the trial court reported that

> The foreperson sent out a form here. They haven't written this out on the back of the indictment, but they will. It's malice murder, not guilty; felony murder, not guilty; possession of a firearm during the commission of a crime, guilty; aggravated assault, guilty; involuntary manslaughter, guilty; reckless conduct, guilty; pointing and aiming a gun at another — Of course, that's the two — part of the . . . misdemeanor part under involuntary manslaughter. And they need to put this on the back of the indictment. . . . That's what she wanted to know, correct?

The form was sent back to the jury with the judge's instruction, and the court inquired of counsel whether the verdicts on aggravated

---

[1] Although both Easley and the State filed motions in arrest of judgment to address the issue of the mutually exclusive verdicts, such a motion addresses only defects not amendable appearing on the face of the record or pleadings, and the court may only consider the indictment, plea, verdict, and judgment in making its determination. OCGA § 17-9-61 (a); see *Hall v. State*, 202 Ga. 42, 45 (2) (42 SE2d 130) (1947). That is not the situation here where we must consider the transcript also because neither the first nor second verdict forms are contained in the record. Therefore, we address only whether the trial court erred in denying Easley's motion for new trial on this ground.

We do not consider the State's argument that the trial court improperly found the first verdict contained mutually exclusive findings because this is not a matter which the State is allowed to appeal. OCGA § 5-7-1.

assault and involuntary manslaughter were inconsistent.[2] During that discussion, defense counsel stated that "I think the Court should instruct the jury that the findings on aggravated assault and involuntary manslaughter are mutually exclusive and that they need to decide on one or the other of those." After discussion, the court instructed the jury that if they wanted to make this form their verdict, it should be attached to the indictment and signed by the foreperson. The jury did this and returned the verdict to the courtroom.

At this point, the trial court refused to accept the verdict and told the jury that "I am not accepting the verdict at this time, at least proposed verdict, and the reason I am not is I am instructing you that you have rendered inconsistent guilty verdicts on the charge of aggravated assault and involuntary manslaughter; therefore, I am sending you back into the jury room to further consider that matter."

At 12:30 p.m., the jury indicated it had a second verdict. The following exchange occurred:

> THE COURT: Do you have the indictment too? We need the indictment too. . . . Let's see what you've got. What's the other — There's no finding as to the other charges.
> THE FOREPERSON: We were thinking that they were included in —.
> THE COURT: No, it's — Let me speak to the attorneys here. [Untranscribed bench conference]
> THE COURT: I sent you back to make a disposition of the further consideration between the —.
> [DEFENSE COUNSEL]: Your Honor —.
> THE COURT: — involuntary manslaughter and the other, so I'm going to have to ask you to go back in the jury room. I'll let you know my instructions in just a moment.

The court stated he would not accept this verdict, and defense counsel then argued that this verdict was not inconsistent on its face and was a proper verdict. The trial court then told the jury

> I told you a little bit earlier that there was in my opinion that the verdict as far as the offense of *aggravated assault* and *involuntary manslaughter* was inconsistent, and I sent you back for further deliberation on that. I am unable to ascertain from this verdict what you did with that, so you

---

[2] Although the trial court used both the terms inconsistent and mutually exclusive, the discussion with counsel makes apparent that he was concerned that the verdicts were mutually exclusive. *Dumas v. State*, 266 Ga. 797, 799 (2) (471 SE2d 508) (1996).

need to make — let the Court be aware of what you did. So I'm going to send you back in to further deliberate on this matter. That's what I charged you. So go back in, make your findings, whatever they may be. I have no opinion whatsoever.

(Emphasis supplied.)

The jury then returned the third verdict upon which judgment was entered. It found Easley not guilty of malice murder, not guilty of felony murder, guilty of possession of a firearm during the commission of a crime, and guilty of aggravated assault.

The first and second verdict forms are not part of the record here, only discussion of them by the court and counsel. After return of the third verdict, the following exchange occurred:

> [DEFENSE COUNSEL]: . . . I would like to have the record reflect that when the jurors came out the last time the indictment had written at the bottom of it —.
> THE COURT: Yes.
> [DEFENSE COUNSEL]: — not guilty on Count 1, not guilty on Count 2, and guilty on Count 3.
> THE COURT: That's correct.

Easley argues, based on *Maltbie v. State*, 139 Ga. App. 342, 344 (2) (228 SE2d 368) (1976), that the second verdict controls this case because actions taken thereafter were void as violative of double jeopardy. Pretermitting the fact that the first and second verdict forms are not contained in the record before us and the only indication of what they contained is the reading by the court of the jury's note and the colloquy set out above,[3] we consider whether the first verdict, which was signed by the jury foreman, received and published in open court, contained mutually exclusive convictions of aggravated assault and involuntary manslaughter and whether the court's directing the jury to continue deliberating after the jury indicated it had a second verdict was proper.

> Verdicts are *mutually exclusive* "where a *guilty verdict* on one count logically excludes a finding of *guilt* on the other. (Cits.)" *United States v. Powell*, 469 U. S. 57, 69 fn. 8 (105 SC 471, 83 LE2d 461) (1984). Accord *Dumas v. State*,

---

[3] *Britt v. State*, 202 Ga. App. 689, 690 (1) (415 SE2d 492) (1992) (colloquies between court and counsel not competent evidence of facts stated therein); see *Cooper v. State*, 235 Ga. App. 66, 67 (1) (508 SE2d 447) (1998) (factual representations in briefs not considered if facts do not appear on the record); *Whitt v. State*, 215 Ga. App. 704, 706 (1) (452 SE2d 125) (1994) (same).

266 Ga. 797, 800 (471 SE2d 508) (1996) (verdicts are mutually exclusive where it is "both legally and logically impossible to convict (the accused) of both counts").

(Emphasis supplied.) *Jackson v. State*, supra at 410 (2).[4]

Here, both the malice murder and felony murder counts alleged that Easley intentionally shot Goss. In his charge to the jury on aggravated assault as a lesser included offense of either the malice murder or felony murder count, the trial court instructed them that a person commits aggravated assault "when he assaults another with a deadly weapon. An assault within the meaning of this crime means the commission of a violent injury to the person of another." Therefore, the trial court's instruction limited the consideration of aggravated assault to OCGA § 16-5-20 (a) (1).

" '(A)n aggravated assault with a deadly weapon based on OCGA § 16-5-20 (a) (1) cannot be committed by criminal negligence.' *Dunagan v. State*, 269 Ga. 590, 591-592 (2) (502 SE2d 726) (1998). Proof of criminal intent is essential for a conviction of an (a) (1) assault. Id." *Jackson v. State*, supra at 411 (2).

Involuntary manslaughter, however, requires the commission of an unlawful act, other than a felony, which causes the death of another human being "without any intention to do so." OCGA § 16-5-3 (a). Proof of criminal negligence is essential for a conviction of involuntary manslaughter based on reckless conduct. *Jackson v. State*, supra at 412 (2).

Under the circumstances of this case, where there was one act committed upon one victim at the same time, either intentionally, as argued by the State, or accidentally, as argued by Easley, the trial court correctly concluded that the convictions of aggravated assault and involuntary manslaughter were mutually exclusive and required the jury to continue deliberating. *Jackson v. State*, supra; see *Dumas v. State*, supra.

When the jury returned the second time, the trial court concluded that the jurors had not followed his direction that they reconsider the aggravated assault and involuntary manslaughter lesser included offenses, because there was no mention of them on the

---

[4] Georgia does not recognize an *inconsistent verdict rule*, [*Lawrence v. State*, 274 Ga. 794 (560 SE2d 17) (2002); see also *Jackson v. State*, supra at 492, n. 3,] which would permit a defendant to challenge the factual findings underlying a *guilty verdict on one count* as inconsistent with the findings underlying a *not guilty verdict on a different count*. A conviction on one count and acquittal on another related count may reflect a compromise or lenity by the jury rather than inconsistent factual conclusions, and Georgia courts generally will not look behind the jury's decision to convict on certain counts and acquit on other counts. (Emphasis supplied.) *Hines v. State*, 276 Ga. 491, 492 (2) (578 SE2d 868) (2003).

paper given to the court. He recharged the jury to continue deliberating that matter, after which the jury returned with the aggravated assault and possession of a firearm during the commission of a crime guilty verdicts.

As indicated above, this piece of paper (the second verdict) is not contained in the record here. As reflected by the record, the trial court did not accept that writing as the jury's verdict because of the jury's failure to resolve the mutually exclusive aggravated assault and involuntary manslaughter findings. "Since '(v)erdicts acquire their legality from return and publication' (*Bradley v. State*, 135 Ga. App. 865, 870 (219 SE2d 451) [(1975)]), there was no verdict in this case until it was received and published in open court. *Bell v. State*, 163 Ga. App. 672, 674 (295 SE2d 147) [(1982)]; *Harden v. State*, 160 Ga. App. 514, 516 (287 SE2d 329) [(1981)]." *Green v. State*, 208 Ga. App. 1, 2 (1) (429 SE2d 694) (1993). See also *State v. Lane*, 218 Ga. App. 126, 128 (460 SE2d 550) (1995).

> "OCGA § 17-9-2 provides in part that 'verdicts are to have a reasonable intendment, are to receive a reasonable construction, and are not to be avoided unless from necessity.' We must construe verdicts 'in the light of the pleadings, the issues made by the evidence, and the charge of the court.' (Citation and punctuation omitted.) *Reed v. State*, 87 Ga. App. 154 (1) (73 SE2d 223) (1952)." *Davis v. State*, 225 Ga. App. 627, 630 (4) (484 SE2d 655) (1997).

*Stevenson v. State*, 234 Ga. App. 103, 107 (4) (506 SE2d 226) (1998).

By analyzing the indictment, the full charge of the jury, and the somewhat cryptic exchanges between the jury foreman and the court, it becomes apparent that the jury had not yet complied with the trial court's direction regarding the mutually exclusive verdicts on aggravated assault and involuntary manslaughter. It was therefore proper for the trial court to instruct them to continue deliberating on those two charges. See *Altman v. State*, 229 Ga. App. 769, 772 (6) (495 SE2d 106) (1997).

Easley's reliance on *Maltbie v. State*, supra, is misplaced. In that case, on the single charge of cruelty to children, the jury tendered to the trial court its verdict which found Maltbie "guilty without intent" and recommended mercy. The trial court refused to accept the verdict and ordered the jury to continue deliberations and to return a verdict of "guilty or not guilty." The jury then returned with a verdict of "guilty." When the court inquired if the foreman had anything to say, he stated that "[w]e [find] the defendant guilty without intent and recommend mercy." (Punctuation omitted.) Id. at 344 (2). This Court concluded that, as a matter of law, the initial finding by the jury of

"guilty without intent" was an acquittal and sending the jury back to reconsider violated double jeopardy. That is not what occurred here. The jury's conclusions regarding the malice murder and the felony murder counts of the indictment remained the same "not guilty" finding through the entire process as did the guilty verdict on possession of a firearm during the commission of a crime, and there was no instruction that they reconsider these counts.

Easley's situation is more similar to that in *Kimmel v. State*, 261 Ga. 332 (404 SE2d 436) (1991). There, the jury presented to the court a verdict form which contained two sections, one indicating a finding of guilty of the charge of murder and one indicating not guilty of that charge. The jury presented the form to the court with the words "not guilty" marked out and "undecided" in its place. Kimmel's contention that this amounted to a finding of "not guilty" and precluded continuing deliberations as a matter of double jeopardy was rejected by the Supreme Court. Instead, that Court found the trial court's interpretation of the verdict form to mean the jury was undecided or not unanimous to be a reasonable one. Id. at 334 (2).

Similarly, here, the jury remained undecided as to the lesser included offenses of aggravated assault and involuntary manslaughter and was properly directed to continue deliberating.[5] See *McElroy v. State*, 244 Ga. App. 500, 501 (1) (536 SE2d 188) (1999).

There was no error.

*Judgment affirmed. Barnes and Adams, JJ., concur.*

DECIDED JUNE 24, 2003 —<br>RECONSIDERATION DENIED JULY 7, 2003 —

*Hudson, Montgomery & Kalivoda, David R. Montgomery, Richard F. Connelly, Jr.*, for appellant.

*Kenneth W. Mauldin, District Attorney, Edward H. Brumby, Jr., Assistant District Attorney*, for appellee.

---

[5] We note that, even had the jury returned a not guilty verdict on aggravated assault, Easley's conviction of possession of a firearm during the commission of the aggravated assault could stand because it was only inconsistent, not mutually exclusive, with the underlying felony charge. See *Kimble v. State*, 236 Ga. App. 391, 392-395 (1) (512 SE2d 306) (1999).