## A06A1500. ELLIS v. THE STATE.
(637 SE2d 729)

BARNES, Judge.

Ronald Keith Ellis was convicted of kidnapping, kidnapping with bodily injury, aggravated battery, aggravated assault, and false imprisonment. The kidnapping and false imprisonment counts merged with the conviction for kidnapping with bodily injury, and because

---

this was Ellis's second serious violent felony, the trial court sentenced Ellis to life without parole, per OCGA § 17-10-7 (b) (2). The court also sentenced Ellis to 20 years on the aggravated assault conviction and 20 years on the aggravated battery conviction. He appeals, contending that (1) the evidence on the kidnapping charges was insufficient; (2) the trial court erred in admitting similar transaction evidence; (3) his pretrial guilty plea to aggravated assault and aggravated battery was never withdrawn, and thus he cannot be convicted on those counts; (4) the verdict form and the return of the verdict were improper; and (5) his trial and first appeal counsels were ineffective for numerous reasons. For the reasons that follow, we affirm.

1. We view the evidence on appeal in the light most favorable to the verdict and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility but only determine if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840 (1) (607 SE2d 565) (2005). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that in March 2002, the victim came to the Big Creek Tavern in Hall County to meet friends for dinner. She played a game or two of pool with a friend against Ellis and another man, and then sat at the bar with her friends and ate dinner. When she finished, she walked down a short hallway to the restroom, and when she came out she felt something hit her head from behind. She staggered, dizzy, and realized that a man was striking her in the head with a wooden bat. She tried to get away but he put his hands around her throat and dragged her toward an open window in the hallway as she struggled fiercely, screaming, flailing, and fighting as hard as she could. The attacker told her not to scream or he would cut her throat. She fell to the floor, face up, and saw her attacker's face and clothing. At trial the victim identified her attacker as Ellis.

One of the servers came around the corner to the hall and saw the victim lying on the floor with her skirt hiked up around her hips while a man dressed in a black tee shirt, camouflage pants, and black combat boots stood over her, dragging her toward the open window. The server screamed and Ellis let go of the victim, fleeing through the window. The victim had a gash on her forehead, along with other injuries, and was bleeding profusely.

The server turned and yelled to the manager that someone had attacked the victim, jumped out the window, and was heading down the drive toward the back of the restaurant. She described his clothing, which consisted of a black tee shirt, camouflage pants, and black boots. The manager and a friend ran through the kitchen and out the back door, with the kitchen staff following her, and saw Ellis

running through the trees and bushes behind the restaurant. When they reached a fence at the edge of a small wooded area, Ellis was there on the opposite side, and he was the only person out there. He was wearing a black tee shirt, camouflage pants, and combat boots. They asked him if he had seen anyone, and he replied, "What happened to [the victim]?" They had not mentioned the victim, and one of them said, "I know you did it."

A customer who had come outside and who knew Ellis approached him. Ellis told him "I can't go down for this," and the customer talked him into coming back inside the building. While they were talking, the customer noticed that Ellis kept rubbing his hands, and once inside, he saw blood between Ellis's fingers. The manager also saw that Ellis had blood between his fingers, which he was trying to wipe off. Ellis's truck, with the passenger door open, was parked near the open window through which he tried to pull the victim.

A woman who lived in a house just behind the restaurant saw a truck coming down the driveway with its lights out, and she asked her husband to close the gate in the fence between the restaurant and house. The husband testified that he saw Ellis by his truck that evening and exchanged hellos with him. About ten minutes later the couple heard a big commotion outside, followed by police sirens. The wife came outside eventually and saw Ellis in handcuffs. He said, "Tell them I was back there talking to you and [your husband]," and she thought, "Oh no you weren't."

A deputy sheriff, who had been close by, arrived at the scene very quickly. He learned that a man in a black tee shirt and camouflage pants had hit the victim in the face, spun her around, and dragged her backward toward the open window. The victim pointed out Ellis as her attacker, who was back inside the bar by that time. The deputy sheriff, the victim's friend, and the manager all testified that Ellis was the only one in the restaurant that night wearing a black tee shirt, camouflage pants, and black boots. Ellis claims, however, that he had been shooting pool all night and he had not left the room. The deputy walked Ellis outside, and found a folding pocketknife in his front pocket and "flexicuffs" in another pocket, which are wire ties that officers use as backup handcuffs. A crime scene investigator found a bloody wooden billy club at the edge of the woods behind the restaurant.

In addition to the gash on her forehead, the victim suffered scraped hands, a bruised ear and shoulder, and lumps on her head. She required eight stitches to close the cut on her face, as well as multiple CAT scans to check for problems due to the blows on her head.

Ellis contends that the State failed to introduce any evidence that he moved the victim, and thus the element of asportation critical

to the kidnapping charge was missing. "A person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." OCGA § 16-5-40 (a). For a kidnapping conviction, the State must prove an unlawful asportation of a person against his will. "The determinative factor with regard to the element of asportation is whether appellant even momentarily caused the victim[ ], without lawful authority or warrant, through intimidation and coercion, to engage in actions (including moving from one place to another) against [her] will[ ]." (Citations and punctuation omitted.) *Briard v. State*, 188 Ga. App. 490, 491 (1) (373 SE2d 239) (1988). "Only the slightest movement of the victim is required to constitute the necessary element of asportation. [Cits.]" (Punctuation omitted.) *Nelson v. State*, 278 Ga. App. 548, 551 (3) (629 SE2d 410) (2006). In this case, several witnesses testified that Ellis dragged the victim toward an open window, outside of which his truck waited with an open passenger door. Evidence he dragged the victim a few feet is sufficient for a rational trier of fact to find Ellis guilty beyond a reasonable doubt of kidnapping with bodily injury. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Ellis claims that both his trial counsel and first appellate counsel were ineffective, pointing to six separate issues. To establish a claim of ineffective assistance of counsel, the appellant must show both that counsel's performance was deficient by making errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment, and that his defense was so prejudiced by the deficient performance that he was deprived of a fair trial. *Strickland v. Washington*, 466 U. S. 668, 695-696 (104 SC 2052, 80 LE2d 674) (1984). See also *White v. State*, 193 Ga. App. 428, 429-430 (2) (387 SE2d 921) (1989). As to the first prong, counsel's performance is assessed in light of the totality of the circumstances viewed from counsel's perspective at the time of trial, and Ellis must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. As to the second prong, Ellis must show a reasonable probability that the outcome of the proceedings would have been different, but for counsel's unprofessional errors. Id. Further, each error must stand or fall on its own merits, "and is not aided or aggravated by the accumulative effect of other claims of error." (Citations and punctuation omitted.) *Polk v. State*, 225 Ga. App. 257, 259 (1) (d) (483 SE2d 687) (1997). Finally, "[w]here the issue of trial counsel's effectiveness has been raised on motion for new trial, any claims not raised at that time are waived. *Spear v. State*, 270 Ga. 628 (5) (513 SE2d 489) (1999); *Bagwell v. State*, 270 Ga. 175 (1) (f) (508 SE2d 385) (1998)." *Wilson v. State*, 277 Ga. 195, 200 (2) (586 SE2d 669) (2003).

(a) First, Ellis contends that his appointed attorney was ineffective as a matter of law because he failed to file any motions or appear on Ellis's behalf at any hearing or trial. Because this claim of trial counsel's ineffectiveness was not raised below, it is waived. *Moore v. State*, 279 Ga. 45, 47-48 (8) (609 SE2d 340) (2005); *Pye v. State*, 274 Ga. 839 (1) (561 SE2d 109) (2002) (failure of post-conviction counsel to raise ineffective assistance in new trial motion waives claim). Even if it had not been waived, the record shows that, while appointed counsel made an entry of appearance in September 2002, retained counsel made an entry of appearance the following month. Ellis was not unrepresented at any point, and does not even argue that his defense was prejudiced by the allegedly deficient performance or point to any substantive error resulting from his appointed counsel's inaction. Although he contends that this inaction is per se ineffective under *Grant v. State*, 131 Ga. App. 759 (1) (206 SE2d 709) (1974), that case is inapplicable, holding merely that the trial court should have permitted an appointed counsel to withdraw when the attorney advised the court that he had been unable to confer with the defendant at all before the call of the case to trial.

(b) Ellis contends that all of his trial attorneys abandoned "potentially critical" motions before trial, particularly a motion to suppress. This argument also was not raised before the trial court, and thus it is waived. *Wilson v. State*, supra, 277 Ga. at 200. Further, Ellis makes no substantive arguments regarding the motion to suppress or any other motion. Finally, a motion to suppress would not have been successful, and thus the failure to pursue one is not ineffective. "The trial court did not err in denying [Ellis]'s new trial motion based on counsel's failure to pursue a motion which had no merit." *McCollum v. State*, 257 Ga. App. 330, 333 (2) (a) (571 SE2d 405) (2002). The only items taken from Ellis were the pocketknife and the flexicuffs, both of which were found during a pat-down for weapons before the deputy sheriff questioned Ellis about the incident. Not only was the pat-down permissible in this instance, the items would have been found during a search incident to Ellis's subsequent arrest. Accordingly, even if the issue were not waived, Ellis has shown neither deficient performance nor related prejudice, and thus this enumeration is meritless.

(c) Ellis argues that his trial counsel was ineffective for failing to object when the State called witnesses who were not "properly placed on the witness list." He asserts that he was not served with the State's second additional list of witnesses, two of whom testified, and he contends that three witnesses who testified were not included on any witness list. This argument also was not raised before the trial court, and thus it is waived. *Wilson v. State*, supra, 277 Ga. at 200.

Even if the issue had not been waived, the record shows that all of the witnesses' names were included in investigative reports given to Ellis. One witness was included in the second additional list under her maiden name, and trial counsel actually interviewed two other witnesses. "The witness list rule is designed to prevent a defendant from being surprised at trial by a witness that the defendant has not had an opportunity to interview." *Mize v. State*, 269 Ga. 646, 653 (7) (501 SE2d 219) (1998). Ellis has not argued that he was surprised by the witnesses or that his trial counsel's failure to object to their testimony so prejudiced his defense that he was deprived of a fair trial. We find no error.

(d) Ellis contends that his first appellate counsel was ineffective for failing "to properly research the issue[s] for the motion for new trial and to present evidence necessary for the trial court to make a reasonable determination of whether there was error in the trial sufficient to merit a new trial." Ellis then describes nine separate "issues," the first two being his appointed counsel's failure to act and all his counsels' failure to pursue pretrial motions, which we have already considered. Ellis does not cite any authority regarding the other seven issues he contends his first appellate counsel failed to present properly, but merely lists them. Even if this presentation were sufficient for us to analyze these arguments, we cannot consider them.

As for [Ellis]'s attempt to raise ineffectiveness arguments regarding first appellate counsel's failure to do a better job of proving trial counsel's ineffectiveness, such efforts are misplaced. To the extent that [Ellis] wishes to challenge the effectiveness of first appellate counsel, the only means by which [Ellis] may pursue this ineffectiveness claim is through a habeas corpus proceeding. *Williams v. State*, 270 Ga. App. 371, 372 (2) (606 SE2d 594) (2004).

*Miller v. State*, 273 Ga. App. 171, 174 (4) (614 SE2d 796) (2005).

3. Ellis contends the trial court erred in admitting similar transaction evidence, arguing that the notice was insufficient, the hearing was insufficient, and the transaction was not similar. We will not disturb a trial court's determination that similar transaction evidence is admissible absent an abuse of discretion. *Brooks v. State*, 230 Ga. App. 846 (1) (498 SE2d 139) (1998).

(a) Ellis contends that the similar transaction notice the State served on him was insufficient because it did not include a copy of the prior indictment. Trial counsel failed to object at trial to any deficiencies in the notice, and therefore Ellis cannot raise the issue for the first time on appeal. *Stewart v. State*, 210 Ga. App. 474, 477 (8) (436

SE2d 679) (1993). Even if the issue had been preserved, this enumeration would be without merit. Uniform Superior Court Rule (USCR) 31.3 (B) requires the State to provide the defendant with written notice of its intent to present a similar transaction, including the transaction date, the county where the transaction occurred, and the victim's name, along with a copy of the indictment and verdict. In this case, the notice did not state the county involved and did not include the indictment. However, "the failure of the State to attach copies of the indictment . . . to fully comply with USCR 31.3 (B) does not require automatic reversal or exclusion of the similar transaction evidence, but is subject to testing for harm." *Ellerbee v. State*, 247 Ga. App. 46, 48 (1) (a) (ii) (542 SE2d 146) (2000). Here, the State served the indictment, verdict and police report from the 1985 attack on trial counsel more than a year before the trial took place. The "purpose of the rule is to provide a criminal defendant with fair and adequate notice of the State's intention to utilize evidence of prior similar transactions so that questions as to the admissibility of such evidence can be resolved before trial." *Sweatman v. State*, 181 Ga. App. 474 (1) (352 SE2d 796) (1987). In this case, any error in failing to attach the indictment to the notice was harmless because it was otherwise provided in discovery long before trial.

(b) Ellis argues that the similar transaction hearing was "insufficient" because, instead of calling a witness to testify, the State merely proffered a summary of the witness's testimony. Ellis was thus unable, he argues, to confront directly the similar transaction witness outside the presence of the jury, which would have enabled the trial court to make a proper determination regarding the transaction's admissibility. We have repeatedly approved of such a procedure; the question is "whether defendant was deprived of any substantial rights" by the proffer. (Emphasis omitted.) *Houston v. State*, 187 Ga. App. 335, 338 (2) (370 SE2d 178) (1988); *Harris v. State*, 210 Ga. App. 366, 367 (2) (436 SE2d 231) (1993). The recent decision of the United States Supreme Court limiting the hearsay exceptions to the Confrontation Clause to those "firmly rooted" in the common law do not persuade us otherwise, as the State introduced no hearsay evidence during trial, and Ellis had ample opportunity to cross-examine the similar transaction witness then. See *Crawford v. Washington*, 541 U. S. 36, 41 (124 SC 1354, 158 LE2d 177) (2004).

(c) Ellis contends that the prior transaction should not have been admitted because it was not sufficiently similar to the offense for which he was on trial, and was more prejudicial than probative. Ellis also argues that the trial court's finding that the transaction was admissible for the appropriate purposes of course of conduct, intent, and modus operandi was "inconsistent with the state's argument that identity was not an issue"; that the trial court's "rank speculation" in

making its ruling "robs the trial court's ruling of legal sufficiency"; that the jury charge was wrong; and that the evidence adduced at trial materially differed from the State's proffer.

To show that evidence of independent offenses or acts may be admitted into evidence, the State must establish three things at a hearing: (1) the evidence will be admitted for a proper purpose; (2) sufficient evidence establishes that the defendant committed the independent act; and (3) sufficient connection or similarity exists between the independent offense and the crime charged, so that proof of the former tends to prove the latter. *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). The similar transaction witness testified that Ellis, who was a stranger, came up behind her and her friend one night in 1985 after they walked past a bar. He was wearing a dark shirt and camouflage pants, brandished a weapon, told the women to be quiet, and threatened to kill them. He raped and sodomized the witness's companion, inflicting physical injury, and then fled the scene. At the similar transaction hearing, the State showed that Ellis was indicted for kidnapping with bodily injury, kidnapping, rape, two counts of aggravated sodomy, two counts of aggravated assault with a handgun, and aggravated assault with a knife. That jury convicted Ellis of rape and the two counts of aggravated assault with a handgun, and could not reach a verdict on the other five charges. The trial court admitted the transaction for the purpose of showing course of conduct, intent, and modus operandi, and gave the jury a limiting charge before one of the victims of the 1985 assault testified.

"In reviewing whether there were sufficient similarities to create a connection between the previous crime and the instant crimes such that the former tends to prove the latter, we focus on the similarities rather than the dissimilarities. [Cit.]" *Mitchell v. State*, 249 Ga. App. 520, 522 (1) (548 SE2d 469) (2001). The indicia of similarity should mark the two incidents as likely to have been committed by the same person. *Traylor v. State*, 217 Ga. App. 648, 650 (2) (458 SE2d 682) (1995). We review the trial court's findings on these issues under the clearly erroneous standard. *Roberts v. State*, 241 Ga. App. 259, 261 (3) (526 SE2d 597) (1999). While some aspects of the earlier crime differed from the one for which Ellis was on trial, the similarities are striking. The victims in both instances were young women who were strangers to Ellis, and both incidents occurred at night, at or near a bar. Ellis approached them from behind, brandished a weapon in both cases, threatened to kill the victims, and caused them physical harm. Both times he was dressed in camouflage pants and a dark shirt.

Additionally, the trial court noted that, while the incident took place more than 15 years earlier, Ellis had been out of jail for just over a year after serving his sentence for the similar transaction, and thus

the lapse of time was not a significant factor in determining whether the transactions were similar. "While there was a significant lapse in time between the incidents, any lapse of time between the prior offense and the crimes charged goes to the weight and credibility of the evidence, not to its admissibility. [Cit.]" *McGuire v. State*, 266 Ga. App. 673, 677 (2) (598 SE2d 55) (2004) (time lapse of 21 years not too great because defendant imprisoned for 17 of those years). We conclude that the trial court did not abuse its discretion in finding the earlier transaction sufficiently similar to the one for which Ellis was on trial, so that the former tended to prove the latter.

(d) Ellis contends that the State did not argue that it was introducing the similar transaction evidence to prove identity, and therefore the trial court erred in finding that the transaction was admissible to show modus operandi, which is a term of art for a "signature crime" so unique that the manner of commission speaks to identity. Modus operandi is similar to "course of conduct" — both phrases describe the way the crime was committed, and the State sought to admit the similar transaction for the purpose of showing course of conduct, intent, motive and bent of mind. See, e.g., *Smith v. State*, 267 Ga. 363, 364 (3) (478 SE2d 379) (1996). The trial court did not err in ruling that the transaction was admissible to show course of conduct, intent, and modus operandi, and did not err in so charging the jury.

(e) Ellis asserts that the trial court's "rank speculation" in making its ruling "robs the trial court's ruling of legal sufficiency." In discussing the similarities and differences between the similar transaction and the current transaction, Ellis pointed out that the earlier crime included sexual assault, while the current crime did not. The trial court responded that the crimes were extremely similar, and "the only reason I see that there's not a sexual content to this crime is, well, we don't know what would have happened, and certainly the event was abruptly halted, so the ruling stands." The trial court made this statement out of the jury's presence, and thus it could not have affected the verdict. As discussed earlier, the crimes need not be carbon copies of each other, and the addition of a sexual component to the earlier crime does not subtract from the notable similarities. *Gardner v. State*, 273 Ga. 809, 811 (2) (546 SE2d 490) (2001).

(f) Finally, Ellis contends the trial court erred in admitting the similar transaction evidence because the evidence adduced at trial materially differed from the State's proffer. For example, the State proffered that the victims were walking behind a bar, but the witness testified that they had passed a bar and were near a restaurant; the State proffered that Ellis showed the victims a gun, but the witness testified that she saw the gun but not that Ellis showed it to her; and the State proffered that Ellis forced both victims to remove all of their

clothes, but the witness testified that she had to remove some of her clothes. This argument is meritless, as these differences are insignificant, affecting neither the admissibility of the similar transaction evidence nor the outcome of the trial.

4. Ellis argues that he was improperly sentenced on Counts 1, 4, and 5 of the indictment (kidnapping with bodily injury, aggravated assault with a club, and false imprisonment) because those counts were to be dismissed as part of a negotiated plea. The record includes Ellis's petition to enter an *Alford* plea of guilty to Counts 2 and 3 (kidnapping and aggravated battery by causing a serious disfigurement) in exchange for the State's agreement to drop the other charges. The record also includes the transcript of a hearing on July 7, 2003, in which Ellis entered and the trial court accepted the plea, with sentencing postponed until August 21, 2003. The record contains no transcript of an August 21, 2003 hearing, but while Ellis argues in his brief that he was "forced to go to trial," it is clear from the record that Ellis changed his mind about pleading guilty to anything and wanted a jury trial on all counts. While looking for the original indictment at trial, the parties mentioned that the last time they saw it was when Ellis entered his plea, and no one said Ellis wanted to continue with that plea. Ellis himself admitted at his first hearing on his motion for a new trial that he withdrew his guilty plea, and his argument to the contrary in his appellate brief is disingenuous.

5. Finally, Ellis contends that the form and return of the verdict was improper. When the jury first announced that it had a verdict, the trial court examined the verdict form and instructed the jurors to return to the jury room, because based on their conclusions on Counts 3 and 4 (aggravated battery and aggravated assault) they had to make a finding regarding the lesser included offenses included on the verdict form (battery, simple battery, and simple assault). The jury retired, and the foreperson sent a note to the judge that said, "Your Honor, first time jury, first time foreman. I marked the verdict wrong. I made a clerical mistake. I am sorry." After consulting with Ellis and the State, the judge sent a red pen and a note back to the jury room, which said, "Take the red pen and circle the verdict agreed to in each count." The jury then returned the verdict form with guilty circled in red pen as to each of the five counts. The trial court polled the jury sua sponte, and each juror confirmed that his or her vote was guilty on all counts, both in the jury room and when polled.

Ellis contends that the trial court erred in directing the jurors to deliberate further once they had returned the verdict of not guilty. We find no error. When the jury has not decided the lesser included offenses of which the defendant is charged, the trial court commits no error in directing them to deliberate further to decide those counts.

*Easley v. State*, 262 Ga. App. 144, 150 (2) (584 SE2d 629) (2003). Then, based on the foreperson's note about his error, the trial court devised a solution that allowed the jury to make its verdict clear, which was to circle the correct conclusion in red pen. A color copy of the verdict is included in the record, and it is clear from that copy what the jury intended to find. Besides circling in red the "guilty" option for each of the five counts, the foreperson scratched out the check mark that had been placed beside the not guilty options and initialed the change. This situation differs from that in *Maltbie v. State*, 139 Ga. App. 342, 344 (2) (228 SE2d 368) (1976), in which the jury first returned a verdict finding that the defendant was guilty *without intent* of cruelty to children, and then when instructed to deliberate further, returned with a simple verdict of guilty. We reversed, because to prove cruelty to children, the State must prove that the defendant acted intentionally, so once the jury returned its verdict finding no intent, the trial was over and the trial court lacked authority to return the jury to its room for further deliberation. Id. In this case, the trial court properly returned the jury to its room to decide the lesser included offenses, and upon returning, the jury discovered its error. *Bearden v. State*, 159 Ga. App. 892, 895 (7) (285 SE2d 606) (1981).

Additionally, each juror affirmed that his or her verdict was guilty when they were in the jury room and when the trial court polled them. "The object of the poll is to ascertain before the public and the prisoner that the verdict agreed upon in the jury room is still the unanimous verdict of the jury." (Citation, punctuation and emphasis omitted.) *Tucker v. State*, 252 Ga. 263 (349 SE2d 172) (1984). In this case, "[d]efense counsel did not request that the jury be polled, nor did he voice any objection to the procedure followed by the trial court. Therefore, any errors in the jury poll were waived. Moreover, the manner in which the poll was conducted was adequate." (Citations omitted.) *Awtrey v. State*, 175 Ga. App. 148, 152 (6) (332 SE2d 896) (1985). We find no error in the form and return of the verdict.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 2, 2006 —
RECONSIDERATION DENIED OCTOBER 20, 2006 — ▅▅▅▅▅▅▅

*E. Paul Stanley*, for appellant.
*Lee Darragh, District Attorney, Alison W. Toller, Assistant District Attorney*, for appellee.