### A08A0754. DREW v. THE STATE.
(661 SE2d 675)

BARNES, Chief Judge.

Kenneth Drew appeals his convictions for aggravated assault, aggravated battery, and burglary, contending that the evidence was insufficient. He admits that the State showed he was present during the crimes, but not that he participated in or was a party to them. For the reasons that follow, we affirm the convictions.

We view the evidence on appeal in the light most favorable to the verdict, and no longer presume the defendant is innocent. We do not weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Ellis v. State*, 282 Ga. App. 17 (637 SE2d 729) (2006). We construe the evidence and all reasonable inferences from the evidence most strongly in favor of the jury's verdict. Id.

Viewed in that light, the evidence at trial established that the victim in this case was awakened from his slumber and brutally attacked in his own home. Late on a Saturday night, the victim had some friends over. Drew came to the victim's door "acting real weird" and told someone standing out in the street "oh, no, not now." Drew left, saying they were "just right down the road" and would be back. The visitors left and the victim and his roommate went to bed.

In the early morning hours on Sunday he heard a woman he knew come to his front door and call his name. He opened the door, his head down because he was half-asleep, and saw three sets of legs on his porch. He wondered how his rotten porch could hold three people at one time, but before he raised his head to look the men in the eye, one of them hit him in the head with a bat or a pipe. The victim saw the defendant and grabbed Drew's arm, yelling for his roommate. As Drew came through the door he stabbed the victim in

---

[3] See *Tyson v. State*, 184 Ga. App. 309, 310 (1) (361 SE2d 386) (1987).

the arm and liver. The other two men came in behind Drew and began beating the victim, breaking bones in his fingers, hands, and arms as he tried to defend himself. The victim called for his roommate, who opened his door and saw the victim on the ground with "I don't know how many guys on top of him." Another man came toward him with a bat, but the roommate slammed his door shut and ran out the back door. As he ran around the house he saw a man "on top of [the victim's] head just pounding and pounding and pounding." He ran up to the open front door and threw a chair at the man, screaming for him to get off the victim. The roommate was about "70 percent" sure that the defendant was one of the attackers. Another attacker chased the roommate down the street with a bat but the roommate ran to a local police station and obtained help.

Meanwhile, the assailants left the victim temporarily to look around the house. The victim rose to his knees, choking on his teeth which had all been knocked out. The three men returned, held the victim down, asked for money, and "beat [the victim] in the side of the head repeatedly until [he] finally screamed why are y'all trying to kill me?" The next thing the victim remembered was a police officer walking into the room, then he awoke in the hospital.

A neighbor heard the commotion and called 911. The police arrived within three minutes and the neighbor pointed out three men walking down the road, but the men cut across some property and the police did not find them. The victim identified Drew as one of the attackers to the first officer, and identified him again in the hospital from a photo lineup. At trial, he was certain that Drew was one of his attackers, the first one through the door.

The mother of Drew's child testified that the night of the attack, Drew left the house with two other men and a woman, who said they were going to get in a fight. Later that night, one of the other men had a gash on his head that was bleeding badly. The investigating detective testified that the victim identified Drew as his attacker with no hesitation the day after the incident. The detective obtained an arrest warrant and Drew came to the station a few days later to make a statement. After waiving his *Miranda* rights, Drew said he had been to the victim's house earlier that day and again later with two other men and a woman. After they left the residence, they drove to an area nearby and the two men got out of the car, retrieved a pipe from the trunk, and said they were going to beat up the victim. Drew said he declined their offer to go along, and waited in the car with the woman at a church parking lot until the two men came back. One of the men had a bleeding head wound.

The victim spent five days in the hospital, and underwent immediate surgery to repair the stab wound in his liver. A plate was used to repair his shattered jaw, although it had slipped out of place

before the trial. His foot had been broken, his elbow had been stabbed, facial nerves were damaged, his jaw is restricted, and he suffered a double hernia in the attack. His head and chin are scarred, and his diet is limited. He is in constant pain and cannot work; nor can he afford to repair the residual damage to his body.

The victim explained to the jury that one of his attackers had threatened him a few days before the assault because he had befriended the man's girlfriend, who was the woman who called him to the door the night he was attacked. Drew and Drew's sister were good friends with the woman, who knew the victim had come into some cash from a rental property.

Drew moved for a directed verdict of acquittal on the aggravated battery count, which charged him with rendering a member of the victim's body useless by breaking his left mandible, arguing that the victim testified that another man broke his jaw and no evidence showed Drew held the victim down. The trial court denied the motion because the jury could find from the evidence that Drew was a party to the crime, either by aiding and abetting or by assisting in the battery. The jury convicted Drew of all three counts, and the State presented evidence that Drew previously pled guilty in October 2001 to aggravated assault with a knife. After the State presented evidence that Drew pled guilty in 2001 to aggravated assault with a knife, the trial court sentenced him to serve 20 years in confinement concurrently for the assault and burglary, followed by 20 years on probation for the battery, as well as over $77,000 restitution.

We conclude that the evidence as outlined above was sufficient for a rational trier of fact to find Drew guilty beyond a reasonable doubt of the offenses charged. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED APRIL 25, 2008.

*Elizabeth E. Coolidge, William S. Lewis*, for appellant.

*Spencer Lawton, Jr., District Attorney, Ann M. Elmore, Assistant District Attorney*, for appellee.