## S98A1930. JACKSON v. THE STATE.
### (512 SE2d 241)

THOMPSON, Justice.

Osby Jackson, Jr., was indicted on two counts of malice murder (in connection with the deaths of Orie Jackson and Greg Bailey), two counts of burglary (one count asserted Jackson entered the dwelling of Bailey with intent to commit murder; the other asserted he entered with intent to commit aggravated assault), and one count of terroristic threats. The state sought the death penalty. Following a trial, the jury found Jackson guilty of each count of malice murder, one count of burglary (predicated on entry with intent to commit aggravated assault), and terroristic threats. The jury found statutory aggravating circumstances with regard to the murders (each murder was committed while Jackson was engaged in the commission of another capital felony and a burglary, OCGA § 17-10-30 (b) (2)), and it fixed Jackson's sentences for those crimes at life without parole. The trial court sentenced Jackson to consecutive terms of life without parole for the murders, a consecutive term of twenty years for the burglary, and a concurrent term of five years for the terroristic

---

threats. Following the denial of his motion for a new trial, Jackson appeals.[1]

Viewing the evidence in a light favorable to the verdict, as we are bound to do,[2] the evidence demonstrates the following: Jackson heard rumors that his wife, Orie Dean Benjamin Jackson, was having an extramarital affair. When Jackson saw Orie's car in front of Greg Bailey's house, he knocked on Bailey's door and asked him if Orie was having an affair with him. When Bailey admitted that she was, Jackson confronted Orie, cursed her, ripped her blouse, and tore out a patch of her hair. The police were called to the scene and Jackson was placed under arrest for simple battery. At that point, Jackson threatened Orie's life, stating "I'm going to kill her when I get out . . . you might as well get a cell ready because I'm going to kill her."

Three weeks later, in the early morning hours, Jackson asked his brother to drive him to Bailey's house. Orie's car was parked outside. Jackson got out of his brother's car and told him to go home. Then Jackson forced his way through Bailey's front door.

After entering Bailey's house, Jackson came upon Bailey's roommate, Leroy Banks, and asked about Orie. Banks said he did not know where she was; but Jackson heard Orie's voice. He entered Bailey's bedroom and found Bailey in bed with Orie. Bailey armed himself with a cane and urged Jackson to leave. Jackson ran into the kitchen and grabbed a butcher knife. He stabbed Bailey in the shoulder and twisted the knife; he stabbed him seven more times, in the chest and back. Then Jackson attacked and killed Orie. He stabbed her 19 times, in her arms, chest, back, buttocks, neck and face.

In the meantime, Bailey managed to stumble out of his house and make his way across the street to a vacant lot. He collapsed there and died.

Officer Hines-Bey arrived on the scene and found Jackson leaning against a car. The murder weapon was nearby. The officer asked Jackson what had happened and Jackson replied that he had stabbed himself. When the officer asked why, Jackson replied, "I stabbed and killed my wife, and I stabbed and killed that son-of-a-bitch across the street over there."

1. Jackson asserts the evidence was insufficient to find him guilty of malice murder because he did not carry a weapon into Bailey's house and, therefore, did not kill the victims with "malice afore-

---

[1] The crimes were committed in Glynn County. Jackson committed the crime of terroristic threats on October 1, 1993; he committed the burglary and murders on October 23, 1993. Jackson was indicted on January 26, 1997, and trial commenced on March 10, 1997. The jury returned its verdict on March 20, 1997; the trial court sentenced Jackson that same day. Jackson filed a motion for a new trial on April 1, 1997. The trial court denied the motion on June 15, 1998, and Jackson filed a notice of appeal on June 16, 1998. The case was docketed in this Court on September 2, 1998, and orally argued on November 9, 1998.

[2] *Cimildoro v. State*, 259 Ga. 788 (387 SE2d 335) (1990).

thought." See OCGA § 16-5-1 (a). This assertion is without merit. "Malice aforethought" can be formed instantly; it does not require "premeditation" or a "preconceived" intention to kill. *Wright v. State*, 255 Ga. 109, 113 (6) (335 SE2d 857) (1985).

Jackson also asserts the evidence was insufficient to support his conviction for terroristic threats because there was no evidence that he caused the threats to be conveyed to Orie. See *Cooley v. State*, 219 Ga. App. 176, 177 (464 SE2d 619) (1995) (crime of terroristic threats requires proof that defendant caused threat to be conveyed to the victim). In this connection, Jackson points out that he testified that Orie was not present when he uttered the threats. However, Officer Jenkins testified that Orie was "back at the scene" when Jackson threatened her life. Thus, the jury was authorized to find that Orie was present and that Jackson conveyed his threats to her. See *Wimberly v. State*, 233 Ga. 386, 387 (5) (211 SE2d 281) (1974) (jury must reconcile conflicts between testimony of defendant and witnesses for the state).

Finally, with regard to his conviction for burglary, Jackson asserts the fact that he was not armed when he entered Bailey's house leads to the inescapable conclusion that he did not enter Bailey's house with the intent to commit aggravated assault. We disagree. Generally speaking, in a burglary trial a jury must, of necessity, find intent to commit a felony on the basis of circumstantial evidence. *Kinney v. State*, 155 Ga. App. 95 (270 SE2d 209) (1980). Thus, the issue of intent cannot be controlled by the mere fact that Jackson entered Bailey's house without a weapon. Under the facts and circumstances of this case, the jury was authorized to conclude that Jackson entered Bailey's house with the intent to commit an aggravated assault. *Griffin v. State*, 148 Ga. App. 311 (251 SE2d 161) (1978). See also *Hewatt v. State*, 216 Ga. App. 550, 551 (2) (455 SE2d 104) (1995) (intent necessary for commission of burglary need not be formed at precise moment of entry, but can be formed while perpetrator remains on premises).

The evidence was sufficient to enable any rational trier of fact to find Jackson guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. A plea in abatement on the ground that the indictment was found upon insufficient evidence will not be sustained where, as here, a competent witness appears before the grand jury. *Felker v. State*, 252 Ga. 351, 366 (2) (a) (314 SE2d 621) (1984).

3. Jackson contends the trial court should have dismissed the burglary count because, although it was predicated on the intent to commit an aggravated assault, it did not identify the potential victim of the aggravated assault. However, an indictment for burglary pred-

icated on the intent to commit a felony need not identify the potential victim of the predicate felony. See *Green v. State*, 133 Ga. App. 802, 803 (2) (213 SE2d 60) (1975) (indictment for burglary predicated on intent to commit larceny need not allege description of goods intended to be stolen).

4. Jackson asserts the trial court erred in denying his challenge to the array of the grand and traverse juries because young adults between the ages of 18 and 34 have been systematically and intentionally excluded. In this regard, Jackson points out that young adults make up 33.7 percent of the voting age population of Glynn County; and that they share similar attitudes, mores, values, ideas and experiences.

Whether an age group is a cognizable group depends on the time and location of the trial. *Hicks v. State*, 256 Ga. 715, 718 (7) (352 SE2d 762) (1987). Even if young adults were a cognizable group in Glynn County at the time of trial, Jackson's challenge to the array fell short because he did not show the actual number of young adults in the Glynn County jury pools. Thus, Jackson failed to present evidence showing that young adults have been consistently underrepresented. *Potts v. State*, 259 Ga. 812, 813 (388 SE2d 678) (1990); *Spivey v. State*, 253 Ga. 187, 198 (319 SE2d 420) (1984). Cf. *Parks v. State*, 254 Ga. 403, 409 (330 SE2d 686) (1985) (young persons between ages of 18 and 29 comprised 33.3 percent of adult population in DeKalb County but only 18.3 percent of traverse jury list and 4.54 percent of grand jury list).

5. Because the terroristic threats constituted a prior difficulty between Jackson and his wife, evidence of the terroristic threats would have been admissible upon a trial of the other charges. See *Wall v. State*, 269 Ga. 506, 509 (2) (500 SE2d 904) (1998) (evidence of defendant's prior acts toward the victim, whether an assault, a quarrel or a threat, is admissible to show defendant's motive, intent and bent of mind). It cannot be said, therefore, that the trial court abused its discretion in failing to sever the terroristic threats charge from the other charges in the indictment. See *Catchings v. State*, 256 Ga. 241, 243 (4) (347 SE2d 572) (1986) (trial court does not abuse its discretion in denying severance of charges where evidence of one crime would be admissible in trial of other crime).

6. The terroristic threats were not erroneously admitted into evidence. Even if it can be said that the police placed Jackson in custody before he made the threats, it is clear that the threats were not the product of a custodial interrogation: Jackson uttered the threats spontaneously at the scene of his arrest. See *Roberts v. State*, 252 Ga. 227, 229 (314 SE2d 83) (1984).

7. The trial court did not err in limiting Jackson's cross-examination of prosecution witness Leroy Banks. Banks was asked if

he recalled telling officer Hines-Bey that Jackson had a cane in his hand when he entered Bailey's house. Banks replied that he did not make such a statement. Jackson again asked Banks if he recalled telling the officer that Jackson had a cane in his hand. That time Banks replied that Jackson did not have a cane in his hand; that it was Bailey that had a cane. When Jackson asked Banks if he recalled making a contradictory statement to the officer, the state interposed an "asked and answered" objection. It cannot be said that the trial court erred in sustaining the state's objection to the question. A trial court does not abuse its discretion in limiting the right to a thorough cross-examination by disallowing the repetition of a question. *Eades v. State*, 232 Ga. 735, 737 (2) (208 SE2d 791) (1974); *Lucas v. State*, 192 Ga. App. 231, 232 (2) (384 SE2d 438) (1989).

8. Jackson objected to the admission of 27 photographs of the victims asserting they were repetitious, gruesome and inflammatory. The trial court did not err in overruling Jackson's objection. The photographs portrayed the location of the victims' bodies at the crime scene, and the nature, location and extent of the victims' multiple wounds. They were material, relevant, and admissible, even if duplicative. See *Crozier v. State*, 263 Ga. 866, 867 (2) (440 SE2d 635) (1994).

Likewise, a videotape, depicting a walk-through of the crime scene, was relevant and admissible, even though it duplicated still photographs. *Foster v. State*, 258 Ga. 736, 740 (7) (374 SE2d 188) (1988). It was not an abuse of discretion to admit it in evidence.

9. During the sentencing phase of the trial, Jackson proffered expert testimony as to the length of time Jackson would spend in prison before he would be eligible for parole (if he were to receive a simple life sentence). The trial court did not err in sustaining the state's objection to this testimony. Evidence regarding future parole eligibility is inadmissible. *Philpot v. State*, 268 Ga. 168, 169 (2) (486 SE2d 158) (1997). Nor can it be said that the trial court erred in refusing to charge the jury that "the fact that a defendant may be eligible for parole during the term of his [life] sentence does not mean that he will be paroled." Id. The court correctly charged the jury that life imprisonment means a defendant will be imprisoned for the rest of his life, but he will be eligible for parole. Nothing in the court's charge could have misled the jury into thinking that Jackson would be paroled automatically if he only received a life sentence.

10. The Unified Appeal Procedure is not unconstitutional. *Wellons v. State*, 266 Ga. 77, 91 (33) (463 SE2d 868) (1995); *Ledford v. State*, 264 Ga. 60, 65 (10) (439 SE2d 917) (1994); *Ward v. State*, 262 Ga. 293, 300 (21) (417 SE2d 130) (1992); *Potts v. State*, 259 Ga. 96 (376 SE2d 851) (1989). It was designed for the benefit, not the detriment of a defendant, *Romine v. State*, 251 Ga. 208 (305 SE2d 93)

(1983), and it does not interfere with the attorney-client relationship.

11. Jackson contends the death penalty statutes, OCGA §§ 17-10-16; 17-10-30.1; 17-10-31.1; 17-10-32.1, are unconstitutional because they require the prosecutor to seek the death penalty in order to seek life without parole. *State v. Ingram*, 266 Ga. 324 (467 SE2d 523) (1996). In this regard, Jackson asserts that the statutes force the prosecutor to seek the death penalty even in an inappropriate case and that, therefore, the statutes impinge upon the prosecutor's discretion in the plea bargaining process. This contention is moot because Jackson was not sentenced to death. Besides, "since prosecutorial discretion comes into play under every criminal statute, it is not, of itself, grounds for striking a given statute down as unconstitutional. [Cit.]" *Knight v. State*, 243 Ga. 770, 771 (257 SE2d 182) (1979).

12. Any argument concerning the constitutionality of OCGA § 17-10-30 (b) (7) is moot because the jury did not find the existence of a (b) (7) statutory aggravating circumstance. In any event, the (b) (7) circumstance is not unconstitutionally vague or overbroad as applied. *Taylor v. State*, 261 Ga. 287, 296 (404 SE2d 255) (1991).

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 8, 1999.

*James J. Lacy, Timothy L. Barton, Harrison & Harrison, Anthony L. Harrison,* for appellant.

*Stephen D. Kelley, District Attorney, Thurbert E. Baker, Attorney General,* for appellee.