## A00A0269. CURRY v. THE STATE.
(534 SE2d 168)

JOHNSON, Chief Judge.

John Willie Curry appeals from his convictions of rape and kidnapping. He contends that the evidence was insufficient to support

the verdict and that the trial court erred in admitting certain photographic evidence, in denying him the opportunity to impeach the victim by asking her about her alleged cocaine use hours before she met Curry, and in questioning the victim in order to prove an element of the state's case. Because each of his contentions is without merit, we affirm the convictions.

1. On appeal, the evidence must be construed in a light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence; this court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard set out in *Jackson v. Virginia*.[1]

Viewed most favorably to the verdict, the evidence shows that on March 8, 1995, at about 11:30 p.m., the victim was walking home when a car pulled up alongside her and stopped. Curry, the driver, started talking to the victim. The victim assumed that Curry knew her because he was asking her about her relatives, whom he apparently knew. Curry offered to drive the victim to her home, which was about a block away. The victim, thinking Curry was a friend of the family, accepted the offer. The door on the passenger's side did not open, so she entered the car on the driver's side.

When Curry drove past the victim's street, she asked him where he was going. He said "I know where you live," but then continued driving and turned off onto a dirt road. Curry told her he was facing two life sentences in prison and did not care what happened to him and that if she wanted to see her children again, she would do what he said. Curry said he had a shovel in the trunk and that he could kill her and nobody would ever know she had been out there. The victim tried to get out of the door on the passenger's side, but it would not open. Curry allowed the victim to get out of the car to urinate. Once outside, she started running. Curry caught her and beat her in the head. Using a two and one-half-inch nail she had in her pocket, the victim stabbed Curry in the head and caused it to bleed. Curry wiped the blood on the victim's pants, then picked her up by the neck and choked her until she collapsed onto the ground. He picked her up and threw her into the car. The victim said, "I give up. I'll just go ahead on and do what you want me to do." Curry had sex with the victim, then she pleaded with him to take her home. He refused. Curry eventually started the car and began driving but soon turned around and returned to the same location. The victim again pleaded with him to take her home, which he finally did at about 5:00 a.m. She called an ambulance and was taken to the hospital.

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Vickers v. State*, 241 Ga. App. 452, 453 (527 SE2d 217) (1999).

An emergency room physician testified that he examined the victim the morning of the crimes and found that she had abrasions and contusions on her breasts, neck and back and redness in the vaginal area. A rape kit was prepared and sent with the victim's clothing to the State Crime Laboratory for analysis.

A forensic serologist from the crime laboratory testified that slides taken during the examination of the victim revealed the presence of sperm. He noted that the victim's pants had human blood on them and were heavily soiled, and her underpants were soiled and torn.

Curry testified on his own behalf, giving a very different description of the encounter. He testified that the victim approached his car that night and when he said he was "out here to have some fun," she said she wanted to have some fun, too, and got into the car. As he drove her to the dirt road, he mentioned that he had only $10, to which she replied "okay." They made small talk; she took off her clothes; and they had sex. As they were leaving, the victim told him not to take her home yet. They went back to the dirt road and had sex again. Curry hit his head on the uncovered overhead light in the car as they were having sex, and his head started bleeding. He wiped the blood on the victim's pants. When they finished having sex, Curry gave the victim $10. She asked him to take her to buy crack cocaine, but he took her home instead.

As Curry points out, his version of events is in stark contrast with the victim's. It is well settled, though, that the jury is to assess the credibility of the witnesses, resolve any conflicts in the evidence, and come to a determination of the facts.[2] The jury apparently chose to believe the victim's testimony which, we note, is supported by the testimony of the state's witnesses. In any event, it is not for the appellate courts to determine or question how the jury resolved any apparent conflicts or uncertainties in the evidence.[3] A rational trier of fact could have found Curry guilty beyond a reasonable doubt of kidnapping and rape.[4]

2. Curry raises two enumerations regarding the trial court's admission of photographic evidence.

(a) He argues the trial court should not have admitted Exhibits 10 and 11 because they were no different from photographs already admitted as Exhibits 3 through 8. Exhibits 3 through 8 are photographs taken of the victim at the hospital hours after the incident. According to the trial testimony, the pictures show abrasions and

---

[2] See *Adams v. State*, 271 Ga. 485, 486 (1) (521 SE2d 575) (1999); *Vickers*, supra.

[3] *Williams v. State*, 236 Ga. App. 790, 792 (513 SE2d 757) (1999).

[4] See generally *Gulley v. State*, 271 Ga. 337, 339 (1) (519 SE2d 655) (1999).

scars about the victim's neck, ear, chest, arm and back.[5]

Exhibits 10 and 11 are photographs the sheriff's department took of the victim a few days later. The sheriff asked the victim to return to the department four days after the incident so investigators could check for bruising since, according to the sheriff, bruising patterns sometimes change over the course of a few days. The later photographs were taken using special film and ultraviolet light.

The complaint that photographs of the injured victim are duplicative is not a ground to exclude them from evidence. Photographs which are material and relevant to any issue are admissible even if they may be duplicative.[6] "[T]he Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value."[7] The photographs at issue were taken a few days later with different photographic equipment. Although the sheriff testified that he could discern no material differences in the victim's appearance in the later photographs, that does not mean that the jurors could not see any differences or that the jurors could not use the later photographs as a basis for determining the severity of the victim's injuries or the credibility of her version of events. The pictures were admissible even if they, to some extent, duplicated other photographs.[8] The trial court did not abuse its discretion in admitting the photographs.[9]

(b) Curry also challenges the admission of Exhibit 13, a photograph showing bruises and scabs on the victim's ear. Curry complains that the picture was taken four days after the alleged rape and that, because investigators did not mention or take photographs depicting such injuries in the initial examination, the injuries might have been inflicted during the four-day interim period. This argument presents no ground for reversal.

The victim testified that Curry pulled and pinched her ears in order to restrain her while he had sexual intercourse with her. The sheriff testified that, while he noticed no injuries to her ear on the morning of the incident, the victim told him that morning that Curry had pulled her ears, and he added that the ear injury shown in Exhibit 13 was consistent with what she told him. Whether the injury to the victim's ear as shown in the photograph occurred in the manner described by the victim or in some other manner goes to the

---

[5] The appellate record contains only poor-quality photocopies of the photographs admitted at trial. Therefore, we rely on the trial testimony to tell us what is depicted in the pictures.

[6] *Dukes v. State*, 224 Ga. App. 305, 309-310 (5) (480 SE2d 340) (1997); see *Floyd v. State*, 272 Ga. 65, 68 (4) (525 SE2d 683) (2000).

[7] (Citations and punctuation omitted.) *Martin v. State*, 235 Ga. App. 844, 845 (3) (510 SE2d 602) (1998).

[8] See *Jackson v. State*, 270 Ga. 494, 498 (8) (512 SE2d 241) (1999).

[9] See id.

weight of the evidence, not its admissibility. The ultimate weight and believability of the evidence were left to the jury, as they should have been.[10]

3. Curry argues that the trial court should have permitted him to impeach the victim by calling witnesses to show that she used crack cocaine on the day of the incident, before she encountered Curry. This enumeration presents no basis for reversal.

The state filed a pretrial motion in limine seeking to prevent Curry from introducing evidence showing that the victim consumed cocaine shortly before she met Curry. Curry argued that the evidence was admissible to show the victim's state of mind at the time of the occurrence and to impeach her credibility. The court reserved ruling on the motion and, just before trial started, handed both attorneys a copy of a case, apparently *Dunton v. State*,[11] told counsel it was "exactly [on] point," and instructed defense counsel to "digest it" and "hand it back to the court later." In *Dunton*, this Court held that the trial court acted properly in not permitting the defendant to question a rape victim about her past cocaine use because it was not relevant to the issue of rape and because instances of misconduct may not be used to impeach a witness' veracity unless the misconduct resulted in a conviction of a crime involving moral turpitude.

The trial court in the instant case made no express ruling on the state's motion although, considering the trial court's reliance on *Dunton* and later comments made by both counsel indicating that the motion in limine had been granted, we find that the court implicitly granted the state's motion. Thus, contrary to the state's position that the issue was not preserved because there was no ruling on the motion, we hold that the issue was preserved for our consideration.[12]

During cross-examination, Curry asked the victim if she had consumed any drugs or alcohol on the day of the incident. The victim testified that she smoked a marijuana cigarette and drank four beers and a shot of gin that day. Curry then asked if she had consumed any other drug or alcohol, to which she replied: "Not as I can remember, no." It is this statement Curry sought to impeach with evidence that she also smoked crack cocaine on that day.

A witness may be impeached by disproving facts testified to by her.[13] We note that the evidence at issue does not involve the victim's past sexual conduct and does not come within the ambit of the Rape

---

[10] See generally *Thomas v. State*, 166 Ga. App. 559, 561 (305 SE2d 151) (1983).

[11] 216 Ga. App. 191 (453 SE2d 800) (1995). We say "apparently" because the trial court did not state the case name or citation on the record, just the decision date. The state has provided the case name and citation. Curry does not dispute the accuracy of the information provided.

[12] See generally OCGA § 5-6-30.

[13] OCGA § 24-9-82.

Shield Statute.[14] And, while a witness may not be discredited because of a discrepancy as to a wholly immaterial matter,[15] the victim's consumption of drugs shortly before the incident occurred is not immaterial, inasmuch as it may affect her recollection of events.[16] Moreover, in this case it may be relevant considering Curry's testimony that the victim accepted $10 as payment for sex and then asked him to take her to buy crack cocaine. Under the circumstances of this case, the trial court erred in excluding the evidence.

Nonetheless, even if the evidence should have been admitted, the question remains whether the exclusion of this impeachment evidence was harmful error requiring a reversal and a new trial.[17] The victim admitted at trial that she had used alcohol and illegal drugs on the day she met Curry. And Curry testified, without objection, that after the two had sex, the victim asked him to take her to get crack cocaine. Thus, evidence of her illegal drug use was already before the jury. In light of the other evidence of the victim's drug use and the overwhelming evidence supporting the state's case against Curry, it is highly unlikely that any error in not allowing Curry to call witnesses to show that the victim had smoked crack cocaine earlier that day contributed to the verdict.[18]

4. Curry argues that the trial court "aligned itself with the prosecution" by attempting to prove an essential element of the state's case, namely by asking the victim whether Curry's penis penetrated her vagina. Although a trial judge is prohibited from expressing or intimating his opinion as to what has or has not been proved, the judge does have the right to ask a question or series of questions of any witness for the purpose of developing the truth of the case.[19] The trial court did not express or intimate its opinion regarding what had

---

[14] OCGA § 24-2-3; see generally *Raines v. State*, 191 Ga. App. 743, 745 (2) (382 SE2d 738) (1989).

[15] *Brown v. State*, 260 Ga. 153, 156 (4) (391 SE2d 108) (1990).

[16] *See Letlow v. State*, 222 Ga. App. 339, 342 (2) (474 SE2d 211) (1996) (one purpose of cross-examination is to test the witness' memory); but also see *Parrish v. State*, 237 Ga. App. 274, 282 (6) (514 SE2d 458) (1999) (whether the victim used drugs *in the past or was generally knowledgeable about illegal drugs* is irrelevant to the issue of whether she was raped, as rape is no more lawful when committed against a drug addict than it is against a nondrug addict); *Dukes*, supra (victim's *past* use of cocaine not admissible because no conviction of crime involving moral turpitude and because victim's past use of drugs was unrelated to the issue of whether defendant committed aggravated assault upon him); *Harris v. State*, 196 Ga. App. 304, 306 (3) (396 SE2d 288) (1990) (defendant cannot introduce evidence of victim's *past* drug use in order to impeach her testimony that he forced her to use drugs, as question of whether victim was addicted to cocaine was irrelevant to whether defendant assaulted and imprisoned her).

[17] *Letlow*, supra at 343.

[18] See id.; *Dukes*, supra at 307-308 (2); see generally *Watson v. State*, 230 Ga. App. 79, 81-82 (4) (495 SE2d 305) (1998).

[19] *Dixon v. State*, 196 Ga. App. 15, 19 (10) (b) (395 SE2d 577) (1990); *Mitchell v. State*, 157 Ga. App. 146, 147 (2) (276 SE2d 658) (1981).

been proved. Its questions were addressed to a relevant issue with a view of assisting the jury in ascertaining the truth. There was no error.[20]

Judgment affirmed. *Phipps, J., and McMurray, Senior Appellate Judge, concur.*

DECIDED APRIL 27, 2000.

*Wallace, Hammond & Hammond, Harold W. Wallace III,* for appellant.

*Dennis C. Sanders, District Attorney,* for appellee.