**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 14, 2014**

# In the Court of Appeals of Georgia

A13A2180. SMITH v. THE STATE.

BARNES, Presiding Judge.

Roy Mandell Smith was convicted of three counts of aggravated assault, one count of burglary, and several firearms charges. He contends on appeal that the evidence was insufficient and that his trial counsel was ineffective for not interviewing all of the State's witnesses and not objecting to the admission of cell phone records on relevance grounds. For the reasons that follow, we affirm.

1. On appeal, a defendant no longer enjoys the presumption of innocence. *Ellis v. State*, 282 Ga. App. 17, 18 (1) (637 SE2d 729) (2006). We consider the evidence in the light most favorable to the verdict, without weighing it or deciding the credibility of witnesses. Id. So viewed, the evidence at trial established that Smith and the first victim lived together from 1989 to 1996 and had two children. Their relationship was civil and Smith, who remained in Virginia after the first victim ("the mother") moved to Georgia, maintained contact with the children, although he did not

contribute to their support and saw them rarely. In 2009, the mother "file[d] for child support" for the couple's son, who was then 15. After Smith was served, he told the mother that she needed to drop the case before February 9, 2010 because it would "mess up his credit" and he would not be able to buy a house. On February 1, 2010, Smith waived service of a Virginia child support order directing him to pay the Virginia support enforcement agency $317 a month beginning the next month for the benefit of his son. The order also informed Smith that he had ten days to appeal it.

Smith called his daughter, who was the second victim, about six times on the weekend of February 6, 2010, which she said was unusual. He asked where she, her brother, and her mother were, and each conversation lasted a minute or two. Smith also called the mother on Saturday, February 6, 2010, and told her that it was snowing badly where he was but he was going to send her $300 that she could pick up the next day from a local Wal-Mart. The next day, the mother was unable to retrieve the money and although she called Smith, the matter was not resolved. Smith called his daughter that Sunday evening and again ascertained everyone's location.

At 6:10 a.m. on February 8, 2010, Smith called the mother and said he had straightened out the money transfer problem and she could pick up the money that day. When asked, the mother told Smith that their son was at her parents' house and

their daughter had probably left for school. After the conversation ended, the daughter came out of her room and explained that she had missed the bus. The mother urged her to hurry and left the house to warm up her car. When she stepped outside, she saw a black truck backed into her driveway and someone began to attack her with what felt like a stun gun that was repeatedly shocking her.

The mother fell to the ground, and when she moved her head she "looked up in Roy's face and I seen [sic] him pull that gun to shoot me and he pulled the trigger and he shot me and he kept shooting me." She had no doubt the shooter was Smith, and testified that "[h]e was the last thing I ever set eyes on – and then [he] shot me." The first shot went into her right eye sideways, then Smith shot her several more times. The daughter came to the door and saw Smith shooting her mother. As she started toward her mother, Smith jumped up and began to run toward her with the gun in his hand.

When Smith got off of the mother, she jumped up and ran blindly to a neighbor's house for help. Meanwhile, Smith chased his daughter into the living room, where she fell onto her knees. When she rolled over, she recognized Smith, who was leaning over her holding the gun in her face. She pleaded with him to stop and tried to push his gun away but he shot her in the jaw. Smith continued to pull the

3

trigger but the daughter was looking into the barrel of the gun and saw that he had run out of bullets. He hit her on the head with his gun, then ran out the front door.

The daughter opened the front door to go to her mother, but saw Smith was still nearby. He aimed his handgun at the daughter and pulled the trigger, but the gun was still empty. The daughter shut the door and called 911, then left the house through the back door and ran through the subdivision to a friend's house. She was taken by ambulance to the hospital, where she learned that her mother was still alive. Both victims identified Smith as their attacker.

The lead detective subpoenaed Smith's cell phone records, which indicated that his phone had been used in Virginia around the time of the attack. The records established that Smith called the same phone number 34 times between Saturday, February 6 and Monday, February 8, 2010, and the records for that second cell phone showed that it had been physically located in Georgia during that time period. At 6:10 a.m. on the morning of the assault, someone called Smith's cell phone in Virginia from the second cell phone located in Lowndes County, Georgia, and whoever answered the phone in Virginia then placed a three-way call to the victim's cell phone in Lowndes County. The victim's phone thus showed that the call came from Smith's cell phone, which was located in Virginia, and not from the second cell phone, which

4

was located in Lowndes County. The second cell phone made the last call from Lowndes County at 7:45 a.m. on February 8, 2010, and made a call from Virginia at 7:45 p.m. that evening. Several similar three-way calls had been made from Lowndes County to Virginia to Lowndes County on February 7, 2010. Smith placed the owner of the second cell phone on his visitors' list after he was incarcerated.

After the State rested, the trial court denied Smith's motion for a directed verdict of acquittal. Smith presented three alibi witnesses, all of whom testified they had been with Smith during different times of the day. Smith took the stand and testified that on February 6, 2010, a drug dealer who supplied the victim's brother called Smith from Georgia and made threats, so Smith kept him on the line and used the three-way calling feature on his phone to call the victim's brother to talk about it. He also called the victim that weekend looking for her brother and used the three-way feature again on February 8, 2010. He denied being in Georgia during that time and denied that he had placed the owner of the second cell phone on his jail visitation list, asserting that her name was put there "due to prosecution."

The trial was bifurcated. After the jury returned a verdict of guilty on the aggravated assault, burglary, and firearm possession charges, the State introduced

into evidence certified copies of two of Smith's felony convictions. The jury returned a verdict of guilty on the charge of possession of a firearm by a convicted felon, and the trial court sentenced Smith to serve an aggregate of 60 years in confinement.

Smith argues that the testimony of himself and his alibi witnesses established that he was not in Lowndes County when the victims were assaulted, that no credible or admissible evidence established that he was present in the county, and that therefore the evidence was insufficient to sustain the convictions. To the contrary, both victims testified that Smith was their assailant, and that testimony alone would be sufficient to authorize a rational trier of fact to find Smith guilty beyond a reasonable doubt of the charged offenses. Former OCGA § 24-4-8 (now § 24-14-8) ("The testimony of a single witness is generally sufficient to establish a fact.") Additionally, the State presented evidence that Smith employed an elaborate three-way calling scheme so that it would appear that he called the victims from his own phone that was physically located in Virginia, while he was actually nearby.

Although Smith presented an alternative scenario, an appellate court "does not weigh the evidence or resolve conflicts in testimony. It is the jury's role to assess the credibility of witnesses and resolve any inconsistencies in the evidence." (Citations omitted.) *Brock v. State*, 293 Ga. 156, 157-158 (1) (743 SE2d 410) (2013). We

conclude that a rational trier of fact was authorized to find Smith guilty beyond a reasonable doubt of the charged offenses. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Smith contends that his trial counsel was ineffective for failing to interview the witnesses from the cell phone companies, and that if he had done so, he would have known more about the "substance and the limitations of the cell phone provider's testimony." This knowledge would have permitted trial counsel to make a more "particularized and informed objection" to the admission of the cell phone records on grounds of relevancy and probative value, instead of objecting only on the ground that the State had not laid a sufficient foundation to admit the documents under the business records exception to hearsay, he argues. If trial counsel had interviewed the witnesses, Smith argues, there is a reasonable probability that the jury would have found him not guilty because no physical evidence placed him at the crime scene.

Ineffective assistance is a deficient performance by counsel resulting in actual prejudice to the client. *Head v. Hill*, 277 Ga. 255, 266 (VI) (587 SE2d 613) (2003). At the motion for new trial hearing, Smith's trial counsel testified that he knew the State would be calling the cell phone company witnesses to verify the data in the cell

7

phone records that established the location of the two cell phones on the day of the assault and had reviewed the records himself. He also knew that the State was going to present this evidence to support its contention that Smith was located in Lowndes County when the victims were attacked. Trial counsel extensively questioned the witness from Smith's cell phone provider about foundational matters such as how data was collected and transmitted that showed the location of the cell phone towers off which Smith's calls had bounced, and the trial court overruled his objections to the admission of the documents as business records on the ground that the State had not established a sufficient foundation.

Smith now argues that his trial counsel should have objected to the cell phone records on relevancy grounds, but such an objection would clearly have been meritless. While he is correct that the cell phone records only implied that Smith was in Lowndes County when the assaults occurred, rather than proved it directly, this circumstantial evidence of Smith's location was probative and relevant. "Unless the potential for prejudice in the admission of evidence substantially outweighs its probative value, Georgia courts favor the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jury." (Citation omitted.) *Evans v. State*,

8

233 Ga. App. 879, 881 (3) (506 SE2d 169) (1998). "Since the [evidence] was admissible, an objection to it would have been without merit, and failure to make a meritless objection does not constitute ineffective assistance of counsel." *Sims v. State*, 281 Ga. 541, 543 (2) (640 SE2d 260) (2007)

*Judgment affirmed. Miller and Ray, JJ., concur.*