**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**August 23, 2017**

# In the Court of Appeals of Georgia

A17A1415. ROBINSON v. THE STATE.

BARNES, Presiding Judge.

A jury found Johnny Ray Robinson guilty of aggravated child molestation, and the trial court denied his amended motion for new trial. On appeal, Robinson challenges the sufficiency of the evidence, and he contends that the trial court erred by permitting the introduction of multiple photographs of the victim's injuries, testimony regarding the victim's need for therapy after the sexual encounter, and evidence of his prior bad acts. For the reasons discussed below, we affirm.[1]

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." *Anthony v. State*, 317 Ga. App. 807, 807 (732 SE2d 845) (2012). So viewed, the

---

[1] Because Robinson was tried in March 2015, we will address evidentiary issues raised in this appeal under Georgia's new Evidence Code. See Ga. Laws 2011, Act 52, § 101 (new Evidence Code "shall become effective on January 1, 2013, and shall apply to any motion made or hearing or trial commenced on or after such date").

evidence showed that the 13-year-old victim lived in an apartment complex in Newton County with her mother and siblings. The victim suffered from weakness in her left side, short-term memory problems, and comprehension difficulties caused by a prior traumatic brain injury.

On July 1, 2013, the victim was walking through the apartment complex when two 16-year-olds, Robinson and Joshua Harris, began following her. Robinson lived at the apartment complex, while Harris often visited the complex but did not live there.

Robinson and Harris approached the victim and asked her to go with them to the woods behind one of the apartment buildings. Once in the woods with the victim, Robinson and Harris had sexual intercourse with her, causing her pain and injury in her vaginal area.

Because of the victim's cognitive impairments, her nine-year-old brother often would look after her when she left the apartment. On the day in question, the brother was outside looking for the victim when he heard her screaming and found Robinson and Harris "messing with her" in the woods. According to the brother, Robinson, Harris, and the victim did not have on their pants, and Robinson was on top of the victim while Harris was holding her by the arms. The brother told the two juveniles

2

to leave his sister alone, threw a stick at them in an effort to stop them, and ran and told his mother what he had seen. The mother ran to the woods, where she saw Harris with his pants down on top of the victim with her pants down while Robinson stood to the side. The mother jumped on Harris and struck him, after which Harris and Robinson fled from the scene.

An officer with the Covington Police Department was dispatched to the apartment complex, where he spoke with the victim and her mother, both of whom were distraught and crying. The mother told the officer what she had seen in the woods, and she identified Robinson and Harris as the two juveniles and informed the officer that Robinson lived at the apartment complex. The officer asked the victim if she had been vaginally penetrated and if she was hurt, and she nodded her head yes.

The officer transported the victim to the hospital, where her clothing, including bloody underwear, was collected as evidence, and a police investigator assigned to the case interviewed the victim and her mother. During the interview, the victim told the investigator that Robinson had pushed her to the ground and forced her to take down her pants, after which Robinson had attempted to penetrate her vagina with his penis even though she told him to stop. The victim told the investigator that she believed that the bleeding in her vaginal area had been caused by Robinson trying to

3

penetrate her. The victim denied that Harris forced her to have sexual intercourse with him.

Later that night, the victim was transferred to Scottish Rite Hospital. A sexual assault kit was performed on the victim, and photographs were take of an abrasion, a laceration, and bruising sustained by the victim in her vaginal area.

Robinson and Harris were located and transported to the police department. After interviewing the victim and her mother, the police investigator interviewed Robinson later that night once Robinson was advised of and waived his *Miranda* rights.[2] Robinson told the investigator that he thought Harris had sexual intercourse with the victim. Robinson also told the investigator that he had tried to fully penetrate the victim, but had only been able to get the head of his penis inside of her vagina before he quit. Robinson denied that the victim had been raped, but he admitted that the victim had appeared scared and had tried to pull her pants back up during the encounter.

On July 16, 2013, a follow-up physical examination of the victim was conducted and additional photographs were taken of her injuries, which had not fully healed. Forensic interviews of the victim and her brother were conducted at a child

---

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

advocacy center on that same date. During her forensic interview, the victim told the interviewer that Robinson took off her pants even though she said no, forced her to the ground, and forced his penis into her vagina while holding her down, causing her pain. She initially denied to the forensic interviewer that she had sexual intercourse with Harris, but later in the interview, she stated that Harris had forced her to have intercourse with him.

Robinson was indicted on charges of rape and aggravated child molestation.[3] During the jury trial, the victim testified that she did not want to answer questions about what had happened in the woods, and that she had blocked out the bad things that had happened to her that involved Robinson and Harris. The victim did testify that she remembered going to the hospital after the incident and having pain in her vaginal area. The victim also testified, without any objection from the defense, that she had been seeing a therapist since the time of the incident.

The victim's mother and brother testified and described what that they had seen in the woods. The mother also testified about the victim's impairments resulting from her prior traumatic brain injury, as did a school psychologist who had evaluated the victim in March 2013. **T8. 183-185; T9. 349-353** Additionally, the officer who first

---

[3] It is unclear from the record what charges were brought against Harris.

5

responded to the scene testified to his interactions with the victim and her mother, and the investigator who initially interviewed the victim and Robinson testified about those interviews. The State also introduced recordings of the forensic interviews of the victim and her brother and of the police interview with Robinson.

With respect to physical evidence, a forensic biologist from the Georgia Bureau of Investigation testified on behalf of the State that there was male DNA found in the cervical swabs from the victim's sexual assault kit, although there was insufficient DNA present on the swabs to match it to the DNA profile of any particular male. The State also introduced, without objection from the defense, multiple photographs of the victim's injuries to her vaginal area taken during her initial examination at Scottish Rite Hospital on July 1, 2013 and during her follow-up examination on July 16, 2013, as well as testimony describing those injuries from the pediatric nurse practitioner and physician who conducted those examinations. The pediatric nurse practitioner and physician described an actively bleeding abrasion, a laceration, and bruising to the victim's vaginal area, which they testified was consistent with vaginal penetration and with blunt force trauma caused by a penis. The physician further testified that there was residual bruising still visible at the victim's follow-up examination conducted on July 16, 2013.

6

The State also introduced evidence of prior bad acts committed by Robinson in 2009 and 2012. Following a limiting instruction from the trial court, the State presented evidence that in 2009, Robinson fondled himself and exposed his penis to several young female students at their middle school. Later in the trial, after an additional limiting instruction from the trial court, the State presented evidence that in 2012, Robinson helped a female neighbor at the same apartment complex carry groceries into her apartment unit, but then locked the door and tried to get her to have sexual intercourse with him. The neighbor testified that when she refused Robinson's overtures, he chased her around her apartment and held her down on the sofa before she was able to successfully fight him off. Robinson admitted in a police interview that he had chased the neighbor around her apartment unit and had wrestled with her on the couch while on top of her, but he denied that he had been forceful with the neighbor.

After the State rested, the defense called two witnesses who had been friends with the victim and Robinson. They testified that after the sexual incident in the woods, the victim had acted "regular, like nothing had happened" when they saw her again, had laughed and joked about the incident, and had described how she had acted in a sexually suggestive manner towards Robinson and Harris. The defense also

recalled the victim and played for the jury the recording of the police investigator's initial interview of her on July 1, 2013 in an effort to show inconsistencies in her account of the incident. Additionally, the defense called a special education expert, who testified that the victim appeared to be high functioning, despite her previous traumatic brain injury. Robinson himself elected not to testify.

Upon reviewing all the evidence, the jury was unable to reach a verdict on the rape count of the indictment, and the trial court declared a mistrial on that count due to a hung jury. The jury found Robinson guilty of aggravated child molestation, and the trial court sentenced him to life with the first 30 years in confinement. Robinson filed a motion for new trial, as amended, which the trial court denied. This appeal followed.

1. Robinson contends that the evidence was insufficient to support his conviction for aggravated child molestation.

> When the appellate courts review the sufficiency of the evidence, they do not re-weigh the evidence or resolve conflicts in the testimony; instead they defer to the jury's assessment of the weight and credibility of the evidence. Appellate courts determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citations and punctuation omitted.) *Dority v. State*, 335 Ga. App. 83, 83 (780 SE2d 129) (2015). See *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

"A person commits the offense of child molestation when such person[] . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1). "The crime advances to one of aggravated child molestation when the victim is physically injured. See OCGA § 16-6-4 (c)." *Moon v. State*, 335 Ga. App. 642, 646 (1) (b) (782 SE2d 699) (2016).

Here, the indictment alleged that Robinson committed aggravated child molestation in that he

> did commit an immoral and indecent act to [the victim,] a child under the age of 16 years, with the intent to arouse and satisfy the sexual desires of himself by placing his penis in the sexual organ of said child, said act causing injury, to wit: contusion, bleeding, abrasion, and laceration to the sexual organ of said child[.]

Robinson concedes that there was sufficient evidence that on the day in question, the 13-year-old victim sustained injuries to her vaginal area from a sexual encounter as alleged in the indictment. Robinson argues, however, that there was

9

insufficient evidence that he (rather than Harris) was the one who vaginally penetrated the victim and caused her injuries, given the inconsistencies in the victim's testimony, his account of the encounter during his recorded police interview, and the jury's inability to reach a verdict on the rape charge. Robinson's argument is without merit.

Although the victim was unable to describe her sexual encounter with Robinson when she testified at trial, the jury could consider, as substantive evidence under the Child Hearsay Statute, OCGA § 24-8-820,[4] the victim's prior out-of-court statements made in her forensic interview that Robinson had vaginal penetrated her with his penis and that it hurt. See *Kirkland v. State*, 334 Ga. App. 26, 33 (3) (778 SE2d 42) (2015). Furthermore, the jury could consider the victim's prior out-of-court

---

[4] The Child Hearsay Statute, OCGA § 24-8-820, provides:
A statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with or on such child by another or with or on another in the presence of such child shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party prior to trial of the intention to use such out-of-court statement and such child testifies at the trial, unless the adverse party forfeits or waives such child's testimony as provided in this title, and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

10

statement made in her initial interview with the police investigator that she believed that the bleeding from her vagina had been caused by Robinson. See id. Additionally, the victim's brother testified that he saw Robinson on top of the victim and that both of them had their pants off, and Robinson himself admitted during his recorded police interview that he had vaginally penetrated the victim to some degree with his penis and that she told him it hurt.

Given this combined evidence, the jury was entitled to find that Robinson vaginally penetrated the victim, causing her physical injury as alleged in the indictment. The fact that the victim was unable to describe the sexual encounter at trial, or that there were inconsistencies in her descriptions of the encounter, "went to the weight and credibility that the jury wished to assign to the State's otherwise sufficient evidence and presents no basis for reversal." (Citation and punctuation omitted.) *Galvan v. State*, 330 Ga. App. 589, 593 (1) (768 SE2d 773) (2015). Moreover, the fact that the jury was unable to reach a verdict on the rape charge has no bearing on Robinson's aggravated child molestation conviction "[b]ecause a jury speaks only through its verdict, [and thus] its failure to reach a verdict cannot – by negative implication – yield a piece of information that helps put together the trial puzzle." *Yeager v. United States*, 557 U. S. 110, 121 (II) (129 SCt 2360, 174 LE2d

11

78) (2009). As the United States Supreme Court explained in *Yeager*, "there is no way to decipher what a hung count represents. . . . A host of reasons – sharp disagreement, confusion about the issues, exhaustion after a long trial, to name but a few – could work alone or in tandem to cause a jury to hang," and therefore any effort to ascribe the basis for a hung jury would be mere "guesswork." Id. Accordingly, contrary to Robinson's contentions on appeal, we conclude that the evidence was sufficient to enable a rational jury to find Robinson guilty beyond a reasonable doubt of aggravated child molestation as alleged in the indictment. *Jackson*, 443 U.S. at 319 (III) (B).

2. Robinson also argues that the trial court erred in admitting multiple photographs of the injuries sustained by the victim in her vaginal area. According to Robinson, many of the photographs introduced by the State were duplicative, and the introduction of multiple photographs showing the same vaginal injuries served only to inflame the jury. We are unpersuaded.

As an initial matter, Robinson failed to object to the admission of the photographs, and thus we review his claim only for plain error. See *Lupoe v. State*, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016).

12

> To show plain error, [Robinson] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings. . . . Satisfying all four prongs of this standard is difficult, as it should be.

(Citations and punctuation omitted.) Id. We find no plain error in the admission of multiple photographs of the victim's injuries, which were relevant and material to issues raised in the case and were admissible even if duplicative.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401.

> Unless the potential for prejudice in the admission of evidence substantially outweighs its probative value, Georgia courts favor the admission of any relevant evidence, no matter how slight its probative value. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jury.

(Citation omitted.) *Smith v. State*, 325 Ga. App. 739, 742 (2) (754 SE2d 783) (2014).

"There is abundant case authority that photographs showing an accurate and correct representation of a person or an object material to the issues in the case are

13

admissible." (Citations and punctuation omitted.) *Hill v. State*, 246 Ga. 402, 406 (IV) (271 SE2d 802) (1980). And, as a general rule, photographs showing the extent and nature of the victim's injuries caused by the defendant are relevant and material in a criminal case, and photographs should not be excluded from evidence simply because the State could prove the location and severity of the injuries through other means. See id.; *Taylor v. State*, 304 Ga. App. 573, 576 (2) (b) (696 SE2d 498) (2010); *Jefferson v. State*, 206 Ga. App. 544, 548-549 (5) (425 SE2d 915) (1992). "To rule otherwise would unfairly prejudice the [S]tate from establishing a material fact by more than one source of evidence." (Citations and punctuation omitted.) *Hill*, 246 Ga. at 406 (IV).

Here, proof that Robinson used force was a necessary element of the rape count of the indictment, OCGA § 16-6-1 (a) (1), and proof that the victim was physically injured was a necessary element of the aggravated child molestation count of the indictment. OCGA § 16-6-4 (c). Photographic evidence of the existence and extent of the victim's injuries to her vaginal area thus was relevant and material to proving necessary elements of both crimes charged in the indictment. Furthermore, photographs showing the victim's injuries from different angles and at different stages of the healing process were relevant and material because they demonstrated

14

the severity of the victim's injuries and thus supported the credibility of her account of the sexual encounter over Robinson's account. See *Benton v. State*, 301 Ga. 100, 104 (4) (799 SE2d 743) (2017) (trial court may admit photographs "of the same injury that present different perspectives of that injury"); *Curry v. State*, 243 Ga. App. 712, 715 (2) (a) (534 SE2d 168) (2000) (photographs taken with different photographic equipment on different dates were relevant and material because the jury could use the photographs "as a basis for determining the severity of the victim's injuries or the credibility of her version of events"); *Jefferson v. State*, 206 Ga. App. 544, 548 (5) (425 SE2d 915) (1992) (multiple photographs admissible where "necessary to fully depict the extent of [the victim's] injuries").

Given that the photographs of the victim's injuries were material and relevant to issues raised at trial, the photographs were admissible "even if they, to some extent, duplicated other photographs." *Curry*, 243 Ga. App. at 715 (2) (a). See also *Johnson v. State*, 289 Ga. 106, 108 (2) (709 SE2d 768) (2011) (photographs "are admissible even if they are duplicative and may inflame the jury") (citation and punctuation omitted). As Georgia courts have emphasized, "[t]he fact that [photographs are] somewhat repetitive, will not alone rule them out." *Meeker v. State*, 249 Ga. 780, 780-781 (2) (294 SE2d 479) (1982). See *Marks v. State*, 210 Ga. App. 281, 283 (3) (435

15

SE2d 703) (1993) (no error in admission of multiple photographs and video recording of victim's body, even if the evidence was "somewhat repetitive"). We thus discern no error, much less plain error, in the admission of the multiple photographs of the victim's vaginal injuries. See *Benton*, 301 Ga. at 104 (4); *Curry*, 243 Ga. App. at 715 (2) (a); *Jefferson v. State*, 206 Ga. App. at 548-549 (5).[5]

3. Robinson argues that the trial court erred in allowing the State to elicit testimony from the victim and her mother that the victim had been in continuous therapy since the time of the sexual encounter. According to Robinson, testimony about the victim's need for therapy was not material to any issue in the case, was prejudicial to him, and constituted impermissible victim-impact testimony that should have been introduced only in the sentencing phase of his trial. Again, we disagree.

---

[5] Even if Robinson could show that the introduction of multiple photographs of the victim's injuries constituted error because of the alleged number of duplicative photographs, he cannot meet the third component of the plain error test, which "requires the appellant to make an affirmative showing that the error probably did affect the outcome below." (Citation and punctuation omitted.) *Lupoe*, 300 Ga. at 243 (4). This is because "generally, the admission of cumulative evidence is harmless," and Robinson has failed to show how the admission of the allegedly cumulative photographs prejudiced him in any manner. *Hafeez v. State*, 339 Ga. App. 467, 469 (2) (793 SE2d 632) (2016) (admission of photographs that were duplicative of video recording was harmless).

16

Robinson did not object to the testimony at trial regarding the victim's need for therapy, and thus we review his claim only for plain error, see *Lupoe*, 300 Ga. at 243 (4), which he has failed to demonstrate. "We have previously recognized that evidence of a purported rape victim's state of mind following the attack may corroborate her claim that she was raped." *Smith v. State*, 244 Ga. App. 165, 167 (2) (534 SE2d 903) (2000). Hence, evidence that the victim underwent therapy after her sexual encounter with Robinson was relevant and admissible to corroborate her claim that Robinson had forcibly raped and injured her, a claim that was hotly disputed by Robinson and defense witnesses who testified that the victim appeared "regular, like nothing had happened" after the sexual encounter and had joked about it. See id. (testimony that victim "had been a 'basket case' since the attack" was properly admitted to corroborate victim's rape allegation). Accord *Parks v. State*, 241 Ga. App. 381, 383 (4) (526 SE2d 893) (1999) (evidence of victim's course of risky medical treatment following rape was properly admitted because "it tended to show that she would not have voluntarily consented to unprotected sex with [the defendant]"). It

17

follows that Robinson has failed to demonstrate any error, plain or otherwise, in the trial court's admission of testimony regarding the victim's therapy.[6]

4. Robinson also maintains that the trial court erred in permitting the State to introduce evidence of his two prior bad acts – the 2009 incident in which he exposed himself in front of underage girls, and the 2012 incident in which he attempted to sexually assault a female neighbor. We disagree.

(a) Robinson first contends that the trial court erred in allowing the introduction of evidence of the 2009 and 2012 incidents because neither prior bad act was introduced for a proper purpose under OCGA § 24-4-404 (b) ("Rule 404"),[7] but instead was introduced simply to prove his bad character. Rule 404 (b), however,

---

[6] Although not enumerated as error, Robinson also argues in his brief that the trial court erred in permitting testimony that the victim's brother had been in therapy since witnessing the sexual encounter between the victim, Robinson, and Harris. But Robinson did not object to this testimony at trial and thus must establish plain error. See *Lupoe*, 300 Ga. at 243 (4). Even if we assume arguendo that the trial court erred in allowing the testimony, Robinson has failed to affirmatively demonstrate that the admission of testimony regarding the brother's therapy probably affected the outcome of his trial and therefore cannot show plain error. See id.

[7] Rule 404 (b) provides in part:
Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

18

does not control the analysis in the present case. Rather, OCGA § 24-4-413 (a) ("Rule 413") and OCGA § 24-4-414 (a) ("Rule 414") are the more specific statutes that supercede the provisions of Rule 404 (b) in sexual assault and child molestation cases. See *Dixon v. State*, 341 Ga. App. 255, 258 (1) (800 SE2d 11) (2017); *Steele v. State*, 337 Ga. App. 562, 566 (3), n. 5 (788 SE2d 145) (2016); *Dority v. State*, 335 Ga. App. 83, 95 (3) (780 SE2d 129) (2015). Rules 413 and 414 "create a rule of inclusion, with a strong presumption in favor admissibility," and "the State can seek to admit evidence under these provisions for any relevant purpose, including propensity." (Citations and punctuation omitted.) *Dixon*, 341 Ga. App. at 258 (1). "[A] trial court's decision to admit other acts evidence will be overturned only where there is a clear abuse of discretion." (Citation and punctuation omitted.) *Steele*, 337 Ga. App. at 565-566 (3). We discern no abuse of discretion by the trial court here.

Evidence that Robinson fondled and exposed his penis in the presence of underage girls at their middle school in 2009 constituted evidence of a prior act of child molestation committed by Robinson. See OCGA § 16-6-4 (a) (1); *Bentley v. State*, 179 Ga. App. 287, 287 (1) (346 SE2d 98) (1986) (evidence that defendant exposed his penis to underage girls supported child molestation conviction). Introduction of evidence of the 2009 incident thus was governed by Rule 414 (a),

19

which provides: "In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." And, as we have explained, under Rule 414 (a)

> showing a disposition toward molestation is a relevant purpose and not unfairly prejudicial in light of the nature of that conduct. Thus, evidence that a defendant engaged in child molestation in the past is admissible to prove that the defendant has a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case.

(Punctuation omitted.) *State v. McPherson*, __ Ga. App. __ (800 SE2d 389) (2017), quoting *Eubanks v. State*, 332 Ga. App. 568, 571 (2) (774 SE2d 146) (2015).

It is true that Robinson was 13 years old at the time of the 2009 incident, and a defendant's youth at the time of a prior similar transaction should be considered in determining the relevancy of such evidence. See *Arbegast v. State*, 332 Ga. App. 414, 419 (2) (a) (ii) (773 SE2d 283) (2015). But Robinson was old enough at the time of the prior bad act "to be held criminally responsible for his conduct in this State. See OCGA § 16-3-1 (age 13)[.]" *Dean v. State*, 321 Ga. App. 731, 735 (1) (b) (742 SE2d 758) (2013). Given Robinson's age and his decision to expose himself to several

20

underage girls in a school setting, his actions were "not the faultless act of an innocent child," but rather demonstrate evidence of his lustful disposition. (Citations and punctuation omitted.) *Condra v. State*, 238 Ga. App. 174, 176 (2) (518 SE2d 186) (1999). Accordingly, the trial court did not abuse its discretion in concluding that evidence of the 2009 incident was admissible for a relevant purpose under Rule 414 (a). See id.; *Arbegast*, 332 Ga. App. at 419 (2) (a) (ii); *Ledford v. State*, 313 Ga. App. 389, 390-391 (1) (721 SE2d 585) (2011). Compare *Maynard v. State*, 282 Ga. App. 598, 602-604 (3) (639 SE2d 389) (2006) (similar transaction evidence of the defendant's sexual contact with two male cousins 20 years earlier, when the defendant was around 12 years old, was inadmissible in his trial for aggravated child molestation of a female victim).

The trial court likewise did not abuse its discretion with respect to the 2012 incident. Evidence that Robinson attempted to sexually assault his female neighbor in 2012 constituted evidence of a prior attempted rape or sexual battery committed by Robinson. See OCGA §§ 16-4-1 ("A person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime."); 16-6-1 (a) (1) ("A person commits the offense of rape when he has carnal knowledge of[] . . . [a]

21

female forcibly and against her will[.]"); 16-6-22.1 (b) ("A person commits the offense of sexual battery when he or she intentionally makes physical contact with the intimate parts of the body of another person without the consent of that person."). Rule 413 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant." An "offense of sexual assault" includes attempted rape and attempted sexual battery, see OCGA § 24-4-413 (d) (1), and therefore evidence of the 2012 incident was governed by Rule 413 (a). And, pursuant to Rule 413 (a), evidence of Robinson's prior offense of sexual assault was relevant to prove his intent and lustful disposition in the current case, and to disprove his claim that the victim's allegation of a forced sexual encounter was fabricated. See *Kritlow v. State*, 339 Ga. App. 353, 355-356 (2) (793 SE2d 560) (2016); *Marlow v. State*, 337 Ga. App. 1, 4 (1) (b) (785 SE2d 583) (2016), disapproved in part on other grounds by *Quiller v. State*, 338 Ga. App. 206, 209, n. 3 (789 SE2d 391) (2016). Consequently, the trial court did not abuse its discretion in concluding that evidence of the 2012 incident was admissible for a relevant purpose under Rule 414 (a).

(b) Robinson also argues that the prejudicial effect of the prior bad acts he committed in 2009 and 2012 substantially outweighed any possible probative value of the evidence under OCGA § 24-4-403 ("Rule 403").[8] Pretermitting whether the standard balancing test employed under Rule 403 should apply to evidence introduced under Rules 413 (a) and 414 (a),[9] we conclude that even if it does apply, the trial court did not abuse its discretion in concluding that the balance favored admission of evidence of the 2009 and 2012 incidents. Particularly in light of Robinson's attacks on the victim's credibility, the strong presumption in favor of the admission of evidence under Rules 413 and 414, and the trial court's limiting instructions to the jury, the trial court acted within its discretion in permitting the

[8] Rule 403 provides:
Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[9] See *Latta v. State*, __ Ga. App. __ (2) (Case No. A17A0562, decided June 13, 2017) (noting that court was "assum[ing] without deciding that the evidence admitted under OCGA § 24-4-413 should be evaluated under the same type of balance as evidence admitted under OCGA § 24-4-404 (b), rather than under a balance more generous to its admission"); *Dixon*, 341 Ga. App. at 259-261 (1) (b) (noting that it is unclear whether evidence admitted under Rules 413 (a) and 414 (a) "should be evaluated under a different type of Rule 403 balance that weighs in favor of admission") (citation and punctuation omitted).

State to introduce evidence of Robinson's prior acts of child molestation and sexual assault. See *Dixon*, 341 Ga. App. at 262 (1) (b); *Steele*, 337 Ga. App. at 567 (3); *Eubanks*, 332 Ga. App. at 570 (1).

*Judgment affirmed. Mercier, J., concurs. McMillian, J., concurs in judgment only to Division 4(b), otherwise fully.*